[No. A114589. First Dist., Div. One. May 29, 2008.]

In re the Marriage of MONICA GONG and TERRY KWONG.
MONICA GONG, Respondent, v.
TERRY KWONG, Appellant.

## Counsel

Law Offices of Mattaniah Eytan, Mattaniah Eytan, Eric Schenk; Cooper & Bruning, Brand Cooper, Robert Bruning; Law Offices of Rita K. Johnson and Rita K. Johnson for Appellant.

Tarkington, O'Neill, Barrack & Chong, Robert A. Roth; Law Office of Lisa M. Dugoni and Lisa M. Dugoni for Respondent.

## Opinion

**STEIN, Acting P. J.**—As part of a marital settlement agreement terminating their 21-year marriage, Terry Kwong promised to support his children and pay for half their college expenses. After he failed to pay child support and related obligations for a number of years, his former wife, Monica Gong (now Monica Suryoutomo), obtained a charging order under which Mr. Kwong's existing and continuing obligations were paid directly to her from Mr. Kwong's partnership interest in Milpitas Green, a shopping mall. Several years later, Mr. Kwong filed a motion to stop any further payment, claiming he had fully satisfied his obligations to Ms. Gong. The superior court denied the motion. Mr. Kwong appeals.

After reviewing Mr. Kwong's arguments and the record, we dismiss the appeal as frivolous. We award sanctions to Ms. Gong in the amount of $15,000. We also find sanctions in the amount of $6,000 should be paid to the clerk of this court to defray the costs of processing this appeal. We remand the matter to the trial court for the purposes of awarding Ms. Gong reasonable attorney fees incurred in defending the appeal and seeking sanctions.

### Background

Mr. Kwong and Ms. Gong divorced in September 1994, signing a marital settlement agreement (MSA) that was incorporated into the judgment of dissolution. As relevant here, the MSA required Mr. Kwong to pay $2,500 per

month child support for the couple's two children (then 16 and 14) until the children reached the ages of 27 and 25. Mr. Kwong also agreed, and was required, to pay one-half of the children's college expenses. The MSA further provided that, in the event either party was required to bring any action or proceeding to enforce any of its provisions, the prevailing party would be entitled to recover attorney fees from the other party.

Mr. Kwong almost immediately reneged on the MSA, paying only a few months' child support to Ms. Gong. He also made a single payment of $2,100 directly to the parties' older child to offset some of that child's college expenses. In November 1996, Ms. Gong filed a motion seeking, in part, to compel Mr. Kwong to pay $105,318.05 in child support arrearages and $24,896.97 for college expenses. The parties ultimately reached a settlement under which Mr. Kwong agreed to pay Ms. Gong $115,000 to satisfy his existing obligations to her. This settlement failed when Mr. Kwong did not make the required payment. In January 1999, Ms. Gong filed another motion to enforce Mr. Kwong's obligations. In that motion Ms. Gong also asked the court to determine the amount of Mr. Kwong's arrearages, issue a charging order, and appoint a receiver to collect the amounts owed by Mr. Kwong from his partnership interest in Milpitas Green. The matter was heard on May 23, 2000, and June 5, 2000, by Judge Steven Dylina, who ruled Mr. Kwong owed Ms. Gong $280,214.06 for child support arrearages and $24,896 for one-half of their children's college expenses. Judge Dylina also appointed a receiver and issued a charging order against Mr. Kwong's interest in Milpitas Green to satisfy his obligations under the 1994 judgment. Judge Dylina ordered Mr. Kwong to pay attorney fees to Ms. Gong in the amount of $15,790.75. These rulings were set forth in an August 3, 2000 proposed statement of decision, an August 29, 2000 statement of decision, and later, in the court's order on the rulings, entered on March 1, 2001.[1] Mr. Kwong received a statement of arrearages as of May 1, 2000, and a projected repayment schedule. Thereafter, Mr. Kwong's obligations were paid down by means of quarterly payments of $30,000, beginning June 1, 2001, from his partnership

---

[1] It appears the delay between the dates of the hearing, the date the court filed its proposed statement of decision, and the date the court filed its statement of decision, resulted from the court's request that the parties submit questions they wished to have resolved by the statement of decision, the time it took for the parties to submit those requests, and the time it took the court to consider and reject Mr. Kwong's objections to the court's proposed statement of decision. The seven-month delay between the date the statement of decision was filed and the date the order was entered was caused by a number of things. Ms. Gong had served Mr. Kwong and his attorney with a proposed order, but Mr. Kwong's attorney withdrew from the case without signing it. Mr. Kwong obtained new counsel, who objected to the proposed order. When Ms. Gong's attorney was not able to draft an order Mr. Kwong's attorney would accept, she submitted her proposed order to Judge Dylina on January 3, 2001. Mr. Kwong's attorneys submitted their own version on January 11. Judge Dylina finally signed Ms. Gong's version, with some modifications, on February 1, 2001, and it was filed on March 1, 2001.

interest in Milpitas Green. Each quarter he received a statement showing the balance due, which he never disputed.

In early September 2005, Mr. Kwong, represented by Mattaniah Eytan and Eric Schenk of the Law Offices of Mattaniah Eytan, filed a motion seeking an order that he had satisfied his obligation, claiming the receiver had collected $30,000 more from Mr. Kwong than he owed.[2] He also sought attorney fees from Ms. Gong, and a $100 statutory penalty for failure to file a satisfaction of judgment. (See Code Civ. Proc., § 724.050.) Mr. Kwong's calculations were premised on the theory that the amount of arrearages reflected in Judge Dylina's order was the amount owed when the charging order was filed, March 1, 2001, rather than the date of the hearing, June 5, 2000.

Judge Dylina's proposed statement of decision, statement of decision, and order all recited "the current amount due" for child support was $280,214.06 and Mr. Kwong's obligations for the children's college expenses "is now the sum of $24,896.00." Based on this wording, Mr. Kwong argued Judge Dylina's order set the amount of his obligation as of March 1, 2001, the date the order was filed. If that is the correct interpretation of this order, then Judge Dylina relieved Mr. Kwong from any support obligations for the nine-month period from May 2000 to March 2001, and also relieved him from any obligation to pay interest on his existing obligations for the same period. Mr. Kwong argued he was relieved from these obligations because the words "current" and "now" are unambiguous and meant the amount due as of the March 1, 2001 entry of the order, not as of the time the evidence was adduced and/or the court rendered its decision.

Judge Clifford V. Cretan, who heard Mr. Kwong's motion, rejected his theory, finding, as quite clearly is true, Judge Dylina used the word "current" to refer to the date the evidence of Mr. Kwong's obligations was admitted.[3] Judge Cretan specifically found that the February 2001 order "did not impact the 1994 child support order, which remained and continued on." He characterized his own decision as a commonsense reading of the order, stating, "Otherwise, it would mean that Judge Dylina, in fact, held a hearing, reached a result, and then just called time out for eight or nine months while everybody agreed on the preparation of the final document . . . that those nine months became nonexistent, basically, for both current support and interest calculations. I don't believe that could have been his intention. And certainly, in reading the statement of decision, I don't believe it was."

---

[2] Mr. Kwong's attorneys also sent a letter to the receiver, who was Milpitas Green's general partner, threatening suit should he continue to make payments to Ms. Gong. Ms. Gong has not received any payments since March 2005.

[3] The evidence upon which Judge Dylina's ruling was based was adduced in May and June 2000.

Mr. Kwong has appealed, again asserting the terms "current" and "now" in the March 1, 2001 order are unambiguous and the order therefore must be read to state the full extent of his obligations as of that date. Ms. Gong has filed a responsive brief. She also has filed a motion for sanctions against Mr. Kwong for filing a frivolous appeal. We notified the parties we would consider imposing sanctions and invited them to address the question of sanctions at oral argument. (See Cal. Rules of Court, rule 8.276(e)(3), (4); *In re Marriage of Flaherty* (1982) 31 Cal.3d 637, 654 [183 Cal.Rptr. 508, 646 P.2d 179] (*Flaherty*) [finding due process requires a court imposing sanctions to provide the affected party or attorney notice, an opportunity to be heard, and a written order reciting in detail the circumstances justifying the sanction].)

## DISCUSSION

■ California courts have the inherent power to dismiss frivolous appeals. (*San Ramon Valley Fire Protection Dist. v. Contra Costa County Employees' Retirement Assn.* (2004) 125 Cal.App.4th 343, 349 [22 Cal.Rptr.3d 724]; *People ex rel. Lockyer v. Brar* (2004) 115 Cal.App.4th 1315, 1318 [9 Cal.Rptr.3d 844].) In addition, Code of Civil Procedure section 907 provides that "[w]hen it appears to the reviewing court that the appeal was frivolous or taken solely for delay, it may add to the costs on appeal such damages as may be just." California Rules of Court, rule 8.276(e)(1) allows the court to impose sanctions on a party or an attorney for the taking of a frivolous appeal or appealing solely to cause delay. An appeal is frivolous "only when it is prosecuted for an improper motive—to harass the respondent or delay the effect of an adverse judgment—or when it indisputably has no merit—when any reasonable attorney would agree that the appeal is totally and completely without merit. [Citation.]" (*Flaherty, supra,* 31 Cal.3d at p. 650.) The first standard is tested subjectively. The focus is on the good faith of appellant and counsel. The second is tested objectively. (Eisenberg et al., Cal. Practice Guide: Civil Appeals and Writs (The Rutter Group 2006) ¶¶ 11:102 to 11:103, p. 11-34 (rev. # 1, 2006).) "While each of the above standards provides *independent* authority for a sanctions award, in practice the two standards usually are used together 'with one providing evidence of the other. Thus, the total lack of merit of an appeal is viewed as evidence that appellant must have intended it only for delay.' [Citations.]" (*Id.* at ¶ 11:104, p. 11-35.)

There is no question whatsoever what Judge Dylina *meant* when he signed an order setting forth Mr. Kwong's child support and college expense obligations. Judge Dylina used the figures supported by Ms. Gong's evidence at the hearing on her motion, which, of course, calculated the sums owed as of May 2000. The order Judge Dylina signed on February 5, 2001, is entitled,

"Order After Hearing on May 23, 2000 and June 5, 2000."[4] There is no reasonable basis to conclude Judge Dylina's use of those figures in the order meant he had decided either that no additional sums accrued between the dates of the hearing and the date the order was filed or that the original calculations were in error.

Mr. Kwong asserts the words "current" and "now" are unambiguous and must be found to refer to the time the order was entered. As both terms refer to a state of time, they have no meaning without context. "Current," for example, could mean the moment of thought, the moment of uttering thought, the moment of reducing thought to writing or, as Mr. Kwong suggests here, the moment a writing is filed or is read. In addition, even a term that does not require context to have meaning, and on its own might appear to be completely lacking in ambiguity, can mean something altogether different when context is known, or in light of the circumstances under which it was uttered or written. The California Supreme Court made this point in the venerable case of *Pacific Gas & E. Co. v. G. W. Thomas Drayage etc. Co.* (1968) 69 Cal.2d 33 [69 Cal.Rptr. 561, 442 P.2d 641], where, at pages 38–39, it explained: "If words had absolute and constant referents, it might be possible to discover contractual intention in the words themselves and in the manner in which they were arranged. Words, however, do not have absolute and constant referents. 'A word is a symbol of thought but has no arbitrary and fixed meaning like a symbol of algebra or chemistry . . . .' [Citation.] The meaning of particular words or groups of words varies with the '. . . verbal context and surrounding circumstances and purposes in view of the linguistic education and experience of their users and their hearers or readers (not excluding judges). . . . A word has no meaning apart from these factors; much less does it have an objective meaning, one true meaning.' [Citation.] Accordingly, the meaning of a writing '. . . can be only found by interpretation in the light of all the circumstances that reveal the sense in which the writer used the words.' "

Statutory law, too, recognizes the importance of context and circumstances in construing the meaning of words.[5] Civil Code section 1647 provides, in connection with the interpretation of contracts, "A contract may be explained by reference to the circumstances under which it was made, and the matter to which it relates." This very court, albeit some years past, applied the same principle when it struck from an order a phrase that was repugnant to the intent of the issuing court. (See *Verdier v. Verdier* (1953) 121 Cal.App.2d 190, 192–193 [263 P.2d 57].) The principle has been applied in a number of other California cases involving dissolution proceedings. (E.g., *Cottom v. Bennett*

---

[4] Mr. Kwong made no payments between the hearing on Ms. Gong's motion in May 2000 and the implementation of the receivership in June 2001.

[5] See *Martin v. Szeto* (2004) 32 Cal.4th 445, 448 [9 Cal.Rptr.3d 687, 84 P.3d 374].

(1963) 214 Cal.App.2d 709, 716–718 [29 Cal.Rptr. 715]; *Strohm v. Strohm* (1960) 182 Cal.App.2d 53, 63 [5 Cal.Rptr. 884]; *Graham v. Graham* (1959) 174 Cal.App.2d 678, 686–687 [345 P.2d 316].) We find no merit whatsoever in Mr. Kwong's arguments that the meaning of the charging order must be determined exclusively by the interpretation he attaches to the words "current" and "now."

■ But there is another, significant, reason for rejecting Mr. Kwong's argument. Mr. Kwong's interpretation of Judge Dylina's order, if adopted, would have had the effect of modifying the 1994 child support order by wiping out, retroactively, nine months of support and interest. Although a court has the power to modify support, a court (with an exception that does not exist here) lacks jurisdiction to modify or terminate any amount accruing before a motion to modify or order to show cause was filed. (Fam. Code, § 3651, subd. (c)(1); *County of Santa Clara v. Wilson* (2003) 111 Cal.App.4th 1324, 1326 [4 Cal.Rptr.3d 653]; *In re Marriage of Perez* (1995) 35 Cal.App.4th 77, 80 [41 Cal.Rptr.2d 377].) Mr. Kwong never filed a motion to modify his child support obligations and, as of March 1, 2001, his arrearage under the 1994 judgment had increased to include the sum owed between the date of the hearing in May 2000 and the filing of the order in March 2001, plus the interest on his entire arrearage, which exceeded $5,000 a month. As Judge Cretan observed, in order to accept Mr. Kwong's argument we would have to conclude that Judge Dylina "called time out for eight or nine months." We would also have to find he was unaware of Family Code section 3651, and the well-settled case law on the subject, when he issued an order exceeding his jurisdiction that deprived Mr. Kwong's children of support for no apparent reason. As Judge Cretan pointed out, to read the order as urged by Mr. Kwong "go[es] against . . . common sense." No reasonable attorney would so interpret Judge Dylina's order and therefore, this appeal is meritless and objectively frivolous. (See *Zimmerman v. Drexel Burnham Lambert Inc.* (1988) 205 Cal.App.3d 153, 164 [252 Cal.Rptr. 115].)

■ We are aware sanctions should be "used most sparingly to deter only the most egregious conduct" (*Flaherty, supra,* 31 Cal.3d at p. 651), and that an appeal lacks merit does not, alone, establish it is frivolous (*Dodge, Warren & Peters Ins. Services, Inc. v. Riley* (2003) 105 Cal.App.4th 1414, 1422 [130 Cal.Rptr.2d 385]). ■ This appeal, however, goes far beyond asserting an unmeritorious claim. Mr. Kwong contends on appeal that the enforcement order signed by Judge Dylina in 2001 was in effect a new judgment and only the amount stated in that order could be collected by the receiver. There was only one judgment in this case, the one entered in 1994,

and it obligated Mr. Kwong to make child support payments to Ms. Gong.[6] Mr. Kwong's argument is nothing more than a cynical attempt to impute to Judge Dylina an intention he did not have so that Mr. Kwong might continue to delay satisfaction of his legal obligations to his former wife.[7]

Mr. Kwong agreed to support his children at a level, and for a term, greater than the Family Code required. He explains his failure to pay the promised support on his financial position immediately after the divorce. Although Mr. Kwong is obviously a very talented businessman, he chose to devote his efforts during this time to his own companies, rather than seek salaried employment.[8] Mr. Kwong consistently has refused to discharge the obligations imposed by the judgment unless compelled by court order. Mr. Kwong has pursued every possible avenue to deny support to his children, at least if he was required to pay that support to his former wife for his children's benefit, has failed to pay support even when ordered to do so by the court, and has attempted to take advantage of a delay caused at least in part by his attorneys. Simply put, we are convinced this meritless appeal is also subjectively frivolous, having been prosecuted by Mr. Kwong solely for the purpose of delay.

■ We conclude, therefore, that sanctions are warranted. We begin by dismissing the appeal outright. (See *Ferguson v. Keays* (1971) 4 Cal.3d 649, 658 [94 Cal.Rptr. 398, 484 P.2d 70].) We also find the case to be one where monetary sanctions are appropriate. Factors relevant to determining the amount of sanctions to be awarded a party responding to a frivolous appeal include "the amount of respondent's attorney fees on appeal; the amount of the judgment against appellant; the degree of objective frivolousness and delay; and the need for discouragement of like conduct in the future. [Citation.]" (*Pierotti v. Torian* (2000) 81 Cal.App.4th 17, 33–34 [96 Cal.Rptr.2d 553] (*Pierotti*).) Ms. Gong has produced evidence she has incurred approximately $30,000 in attorney fees on appeal. Although she will be paid her fees in accordance with the terms of the MSA, that sum indicates the time and trouble Ms. Gong has experienced in responding to the appeal. The words of the court in *National Secretarial Service, Inc. v. Froehlich* (1989) 210 Cal.App.3d 510 [258 Cal.Rptr. 506] are apt: "Such an abuse of the legal system for no other purpose than to avoid paying a legitimate claim

---

[6] Judge Cretan explained to Mr. Eytan that there cannot be two judgments in place at one time, and the proceedings before Judge Dylina were arrearage calculations which "did not impact the 1994 child support order."

[7] We do not have before us the exact sum representing the difference between that which Mr. Kwong owes and that which he claimed he owes, but it is a substantial figure, representing the support owed from May 2000 to March 2001, plus the interest on the preexisting debt that accrued during the same period, plus the interest since accruing on those sums.

[8] We also note that when Ms. Gong moved to enforce the support in 1996, Mr. Kwong tendered $115,000 to fund the proposed settlement of his obligations.

simply can no longer be tolerated. It is not fair to the opposing litigant who is victimized by such tactics and it is not fair to the greatly overworked judicial system itself and those citizens with legitimate disputes waiting patiently to use it. In those cases where such abuse is present, an award of substantial sanctions is proper." (*Id.* at p. 526, fn. omitted; see *In re Marriage of Economou* (1990) 223 Cal.App.3d 97, 106 [272 Cal.Rptr. 673].) Here, Mr. Kwong's conduct is made even more objectionable as it attempts to deprive his children of a portion of their support and because, in misconstruing Judge Dylina's order, it attempts to make the court an unwitting accomplice. Ms. Gong has asked for at least $15,000 in addition to her attorney fees. That sum is appropriate and not out of line with sanctions imposed by other appellate courts in like situations. (See *Pierotti, supra*, at p. 34, and cases cited there.)

█ We also find sanctions should be paid directly to the clerk of this court. " ' "Other appellate parties, many of whom wait years for a resolution of bona fide disputes, are prejudiced by the useless diversion of this court's attention. [Citation.] In the same vein, the appellate system and the taxpayers of this state are damaged by what amounts to a waste of this court's time and resources. [Citations.] Accordingly, an appropriate measure of sanctions should . . . compensate the government for its expense in processing, reviewing and deciding a frivolous appeal. [Citations.]" [Citation.]' " (*Pollock v. University of Southern California* (2003) 112 Cal.App.4th 1416, 1433 [6 Cal.Rptr.3d 122]; accord, *Pierotti, supra*, 81 Cal.App.4th at p. 35 [because a frivolous appeal harms the court, not just the respondent, additional award of sanctions payable directly to the court clerk to compensate the state for the cost of processing such appeals is appropriate].)

A number of Court of Appeal decisions have adopted figures of $5,900 to $6,000 as a conservative estimate of the costs of processing an average appeal, basing those figures on a calculation made in 1992. (See, e.g., *Pollock v. University of Southern California, supra*, 112 Cal.App.4th at p. 1434; *Pierotti, supra*, 81 Cal.App.4th at p. 36; *Cohen v. General Motors Corp.* (1992) 2 Cal.App.4th 893, 897 [3 Cal.Rptr.2d 619].) A current cost analysis undertaken by the clerk's office for the Second Appellate District, using the same general methodology, indicates the cost of processing an appeal that results in an opinion by the court to be approximately $8,500, while the cost for processing a case that is resolved without opinion (for example, by dismissal for lack of an appealable order) to be approximately $1,750. We are dismissing the appeal here, but the nature of the case and of Mr. Kwong's arguments have caused us to effectively issue an opinion. However, we also recognize the legal issues involved are not at all complex. We conclude that sanctions of $6,000, payable to the clerk of this court, are appropriate.

An inference of willingness to assist Mr. Kwong's harassment of Ms. Gong and to abuse the court's processes could be drawn from his counsels' sophistry and their litigation tactics, which went beyond proper advocacy and common sense.[9] Mr. Kwong's attorneys have taken a phrase or two from Judge Dylina's order and fashioned from them an argument that subverts that court's intent. We need not, however, determine whether Mattaniah Eytan and Eric Schenk shared their client's motives because we have found this appeal frivolous under both prongs of the *Flaherty* test (*Flaherty, supra,* 31 Cal.3d at p. 650). It is sufficient for our purposes to remind counsel that, when representing a client with a history of avoiding his obligations, it is important to remember that "[a]n attorney in a civil case is not a hired gun required to carry out every direction given by the client. [Citation.] As a professional, counsel has a professional responsibility not to pursue an appeal that is frivolous or taken for the purpose of delay, just because the client instructs him or her to do so. [Citation.] Under such circumstances, the high ethical and professional standards of a member of the bar and an officer of the court require the attorney to inform the client that the attorney's professional responsibility precludes him or her from pursuing such an appeal, and to withdraw from the representation of the client." (*Cosenza v. Kramer* (1984) 152 Cal.App.3d 1100, 1103 [200 Cal.Rptr. 18]; see also Rules Prof. Conduct, rule 3-200(A), (B).)

## DISPOSITION

The appeal is dismissed. The matter is remanded to the trial court to calculate and award to Ms. Gong reasonable attorney fees incurred in responding to the appeal and in seeking sanctions, which amount shall be added to the charging lien and paid to Ms. Gong through the receivership.

As sanctions for bringing this frivolous appeal, Mr. Kwong shall pay $15,000 to Ms. Gong, which amount shall be added to the charging lien and paid to Ms. Gong through the receivership. Attorneys Mattaniah Eytan and Eric Schenk shall each pay $3,000 to the clerk of this court. The clerk of the court is directed to deposit the sums paid to her into the general fund. All sanctions shall be paid no later than 15 days after the remittitur is filed.

---

[9] After we granted rehearing only as to the imposition of sanctions, Ms. Gong's counsel requested that Mr. Eytan rescind his threat of suit against the receiver, Mr. Pang, which was the only thing preventing his distribution of funds to Ms. Gong. Mr. Eytan rejected this request in a letter which closes with the following criticism of Ms. Gong's attorney, Mr. Roth: "[B]eing too much of an advocate blinds you to even a modicum sense of balance."

Attorneys Mattaniah Eytan and Eric Schenk and the clerk of this court are *each* ordered to forward a copy of this opinion to the State Bar upon return of the remittitur. (Bus. & Prof. Code, §§ 6086.7, subd. (a), 6068, subd. (*o*)(3); *Pierotti, supra,* 81 Cal.App.4th at pp. 37–38.)

Ms. Gong is awarded her appellate costs.

Swager, J., and Margulies, J., concurred.