Filed 10/17/14  Estate of Schooler CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

### DIVISION ONE

### STATE OF CALIFORNIA

| | |
|---|---|
| Estate of ROWENA L. SCHOOLER, Deceased. | |
| GLORIA TRUMBLE, as Trustee, etc., | D062877 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. Nos. PN28646 & 37-2007-00101775-PR-TR-CTL) |
| JANE SCHOOLER et al., | |
| Defendants and Appellants. | |
| GLORIA TRUMBLE, as Trustee, etc., | D062878 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. 37-2007-00101775-PR-TR-CTL) |
| JANE SCHOOLER et al., | |
| Defendants and Appellants. | |

APPEAL from a judgment of the Superior Court of San Diego County, Richard G. Cline and Julia Craig Kelety, Judges.  Dismissed.

R. Katherine Schooler Kerns and Jane L. Schooler, in pro. per., for Defendants and Appellants.

Law Offices of Daniel M. Little, Daniel M. Little and William H. Campbell for Plaintiff and Respondent.

In this consolidated case, we once again consider frivolous appeals prosecuted by Jane L. Schooler (Jane) and her sister R. Katherine Schooler Kerns (Katherine) with respect to probate orders entered in the probate estate of their mother, Rowena L. Schooler (Mother). After providing Jane and Katherine due notice we were considering doing so, we exercise our inherent power to dismiss the appeals as frivolous and once again impose sanctions payable to both respondent, Gloria Trumble, trustee of Mother's trust, and to the clerk of the court.

FACTUAL AND PROCEDURAL BACKGROUND[1]

1. Prior Probate Court Proceedings

Quite recently, in *Schooler III*,[2] we considered a related appeal prosecuted by Jane and Katherine and set forth prior proceedings in this case:

"A. *Removal of Personal Representative and Trustee*

"Rowena Schooler (Mother) died in 2004, several years after her husband's death. In trust and will documents, Mother left her assets (in equal value) to five of her grown

---

[1]    On our own motion, we take judicial notice of our prior opinions in this case, *Estate of Schooler* (Jan. 6, 2010, D053924) (nonpub. opn.) (*Schooler I*), *Estate of Schooler* (Oct. 24, 2012, D060251) (nonpub. opn.) (*Schooler II*), and *Estate of Schooler* (Nov. 15, 2013, D062217) (*Schooler III*). We grant appellants' April 4, 2014 motion to augment the record. We deny appellants' November 14, 2013 request for judicial notice.

[2]    See footnote 1, *ante*.

children, Jane, Katherine, John, Andrew, and Louis (the latter three will be referred to as the 'Brothers'). Jane and Katherine are appellants herein. Mother designated Jane, an attorney, as the successor trustee of Mother's two trusts (Trusts) and the personal representative of her estate. The property in the Trusts consisted primarily of numerous parcels of undeveloped land in California and Nevada. The main asset of Mother's estate was a residence in Del Mar, known as the Del Mar beach house.

"Three years after Mother's death, Jane filed a petition seeking to close the estate and distribute the estate assets to one of the Trusts. The Brothers objected, challenging the estate accounting and alleging Jane breached her fiduciary duties in various ways. The Brothers also filed numerous safe harbor petitions, one of which was the subject of a prior appeal in which this court held the Brothers' objections to Jane's final account and their petition to remove and surcharge Jane for alleged breaches of fiduciary duty did not constitute a contest under California law.

"On June 23, 2011, the probate court concluded that for 'good cause' it would remove Jane as trustee and personal representative on its own motion, citing Probate Code sections 8500, subdivision (b) and 15642, subdivision (a). The probate court noted that after six years of litigation between Jane and the Brothers, the parties' '"efforts"' to resolve the disputes '"have gone nowhere"' and it is '"obvious that this is a totally dysfunctional family."'

"Later, in more fully explaining its reasons for removing Jane as trustee and personal representative, the probate court stated: '"[There is] a strong inference . . . that

3

Jane . . . has violated her fiduciary duty to exercise due diligence in the performance of her duties of carrying out the distributive provisions of the trust and estate. . . . [¶] . . . [¶] . . . The family is totally dysfunctional and unable to cooperate, and it appears that every act by one side appears to be opposed by the other, meaning the three brothers versus [Jane]. And the [Trusts and estate] face the potential of being overwhelmed by huge attorney fees and administrative claims related to the family dysfunction and controversy.

"'[Additionally], [Jane] revealed at the recent hearing that she filed bankruptcy petitions for the family trust in order to prevent foreclosure upon out-of-state property. It was represented that these facts were not previously known to the brothers. . . . [¶] . . . [¶] . . . These bankruptcies give rise to a strong inference that Jane . . . has failed to perform her duties of preserving estate assets.

"'Next item is Jane . . . as a fiduciary has actively resisted efforts by the brothers to obtain information and records regarding her actions as fiduciary, and this gives rise to a strong inference that Jane Schooler has violated her duty of loyalty and to avoid a conflict of interest.

"'Next there are assets of the respective estates that have ongoing expenses and potential revenue. And . . . there is a need for someone to manage these properties and to deal with whatever money or expenses there might be.'

"The probate court also made express findings that although Katherine was designated as a successor fiduciary in some of the estate and trust documents, she was not suitable to serve in that position. The probate court explained: "'[Katherine] is not

4

represented by counsel, has never been represented by counsel [during the] six years of litigation. In spite of outstanding petitions to remove Jane Schooler as trustee and executrix, Katherine has not ever filed a petition [or] other pleading seeking the appointment upon a vacancy in office. And I note that the distribution of the trust assets to her contemplates that, I believe, her distribution is to be held in trust. And I also note that the controversy existing among the family is rather huge, complicated, and that the family, as a whole, is dysfunctional. [¶] And based on the foregoing, I find that Katherine would not be a suitable successor trustee or fiduciary . . . and there is an overwhelming need for an independent fiduciary."'

"With respect to a replacement trustee and personal representative, the probate court rejected the Brothers' counsel's request that one of the Brothers be appointed and found that none of the siblings was suitable to serve as trustee. The probate court decided to appoint a neutral independent representative to serve both as the personal representative and as the trustee of the Trusts and ultimately the court selected a professional fiduciary, Gloria Trumble, as the successor trustee of the trusts and the personal representative of Mother's estate.

"Jane filed an appeal from the orders removing her as trustee. In *Schooler II*, we affirmed the orders removing her as personal representative and trustee.

"B. *Breach of Fiduciary Duty Judgment*

"In 2011, following Jane's removal as personal representative and trustee and the appointment of Trumble, Jane and Katherine moved to disqualify the probate judge for

5

bias. The probate judge denied their motions, and Jane challenged the orders denying their motions by way of a notice of appeal and separate petitions for writs of mandate. We dismissed Jane's appeal and summarily denied her petitions for extraordinary relief.

"Jane and Katherine sought and were denied continuances of the trial of the Brothers' claims seeking to surcharge Jane for alleged acts of fraud and breach of fiduciary duty. Jane's counsel also unsuccessfully attempted to obtain from opposing counsel documents previously served on Jane when she represented herself. The day before the trial on the Brothers' claims, December 6, 2011, Jane substituted herself back in as her own attorney; however, Jane failed to appear at trial.

"After the trial, on December 16, 2011, the probate court entered a judgment finding the Brothers had proved their breach of fiduciary duty and fraud claims. In its statement of decision, the probate court found Jane enriched herself to the detriment of her siblings and caused substantial harm to her siblings and loss to both the trusts and the estate. The court set forth specific and detailed examples of Jane's wrongful conduct and misuse of her authority.

"The court ordered Trumble to sell and dispose of assets, including the Del Mar beach house. The court further ordered that Jane be evicted from the Del Mar beach house and that the Brothers' attorney determine whether Jane's conduct should be reported to the state bar.

"C. *Appeal No. D061206*

"In January 2012, by way of separate notices of appeal in the estate action and in

6

the two trust actions, Jane and Katherine appealed from the court's December 16 judgment, statement of decision and related orders. We consolidated those appeals in appeal No. D061206." (*Schooler III*, *supra*, D062217, fn. omitted.)

2. D061206 and *Schooler III*

Jane and Katherine did not file any brief in appeal No. D061206 and, as to both sisters, the appeal was dismissed. In an unsuccessful effort to reinstate her appeal in D061206, Jane filed a proposed brief in which she attacked procedural orders made by the trial court prior to entry of the breach of fiduciary judgment and, in particular, an order denying the sisters' motion to disqualify the trial judge. We denied Jane's motion to reinstate her appeal.

On April 25, 2012, the probate court entered orders directing that Jane cease representing to third parties that she was the personal representative of her mother's estate and the trustee of the two trusts and directing that Jane cease representing that the court's orders had been stayed. The order also confirmed the Del Mar beach house belongs to Mother's trust and is under Trumble's control.

On May 10, 2012, the probate court entered a further order rescinding a quitclaim deed Katherine had executed with respect to Riverside real property owned by a corporation, which in turn was owned by the family trust. (*Schooler III*, *supra*, D062217.)

On May 24, 2012, the probate court determined that Jane and Katherine's motions for a new trial had been denied by operation of law.

Jane and Katherine appealed from the April 25, 2012, May 10, 2012 and May 24, 2012 orders, which appeal was the subject of our opinion in *Schooler III*. In their briefs

7

in *Schooler III*, Jane and Katherine recapitulated arguments Jane asserted in the proposed brief she had attempted to file in D061206. We dismissed the appeal in *Schooler III* with respect to the order denying their motion for a new trial; because Jane and Katherine made no arguments on the merits with respect to the remaining orders, we affirmed those orders.

In *Schooler III*, we also found that Jane and Katherine's prosecution of the appeal was both objectively and subjectively frivolous. We relied in particular on the fact that in *Schooler III* Jane and Katherine reasserted meritless arguments they had attempted to assert in D060216. We imposed on Jane and Katherine $19,485 in sanctions payable to the respondents; we also imposed on their attorney $8,500 in sanctions payable to clerk of the court.

3. These Proceedings

While our opinion in *Schooler III* grew out of the Brothers' breach of fiduciary duty claims against Jane and Katherine, these consolidated appeals grow out of Jane and Katherine's separate disputes with Trumble, the personal representative of the estate and replacement trustee of the trust. The appeals concern Trumble's efforts to carry out the probate court's instructions to sell the Del Mar beach house and preserve the assets of the trust.

Following entry of the probate's court's order directing that Trumble sell the beach house, on April 25, 2012, Trumble obtained an order under *Estate of Heggstad* (1993) 16 Cal.App.4th 943, 950, determining the beach house was trust property. On July 17, 2012, Trumble obtained an ex parte order permitting her, as trustee, to borrow funds using the beach house as security, which order was later superseded by a separate August 21, 2012

8

order confirming Trumble's power to borrow funds.

Thereafter, Trumble filed a petition to terminate the estate proceedings. Jane and Katherine opposed the motion to terminate the estate on a number of grounds, including their contentions that the Brothers had been disinherited and that Trumble should be removed as trustee and personal representative because she had supported efforts by the Brothers to make Jane responsible for attorneys fees incurred while she was executor of the estate and trustee. The sisters also demanded an accounting of the funds Trumble had borrowed as trustee. The probate court found that in light of its earlier order determining that the beach was trust property, the estate had no assets, and terminated the estate.

Although in July 2012, the appraised value of the beach house was $1,750,000, Trumble was able to obtain an all cash offer of $1,855,000 for the house, which she accepted on September 7, 2012. The probate court confirmed that sale on October 25, 2012.

4. Issues Briefed

Our docket in appeal No. D062877 discloses a notice of appeal and three amended notices of appeal, which together seek review of no less than 18 orders entered by the probate court between July 17, 2012, and February 21, 2013. As Trumble points out in her respondent's brief in D062877, Jane and Katherine's opening brief in D062877only addresses two of the 18 orders: the July 17, 2012 order confirming Trumble's power, as trustee, to borrow money and the October 19, 2012 order terminating probate proceedings in Mother's estate.

Our docket in appeal No. D062878 discloses a notice of appeal and an amended notice of appeal that seek review of eight of the same orders subject to appeal in appeal

9

No. D062877 and an April 19, 2013 judgment establishing the trust's ownership of property.  Jane and Katherine's opening brief in D062878 only addresses four orders either set forth in their notices of appeal or arguably reviewable on appeal from orders set forth in the notices of appeal:  once again Jane and Katherine's brief challenges the probate court's July 17, 2012 order confirming Trumble's power, as trustee, to borrow money; Jane and Katherine also challenge an August 21, 2012 ex parte order expunging a notice of action, an October 15, 2012 order establishing Trumble's ownership of the Del Mar beach house, and the October 25, 2012 order confirming sale of the Del Mar beach house.

DISCUSSION

I

*Appeal No. D062877*

Jane and Katherine contest the probate court's July 17, 2012 order permitting Trumble, acting as trustee, to borrow funds secured by the beach house on the grounds that the order was granted ex parte.  This issue is moot for two reasons: (1) the order permitting the secured loan was superseded by a later August 21, 2012 order permitting the loan and from which no notice of appeal was filed; and, more importantly, (2) because the home, and the security it represented, was sold by the probate court on October 25, 2012.  Because the sisters did not obtain a stay of the sale and the house was in fact sold, there is no practical or meaningful relief available to Jane and Katherine with respect to the order permitting Trumble to borrow funds secured by the house.  (See *City of Riverside v. Horspool* (2014) 223 Cal.App.4th 670, 682-683 [failure to obtain stay of receiver's sale renders moot any post sale challenge to proceedings appointing receiver

10

and authorizing sale].)  "A case is moot when the decision of the reviewing court can have no practical impact or provide the parties effectual relief."  (*Id.* at p. 782.)

Jane and Katherine also challenge the order terminating the estate.  They argue the probate court failed to require that Trumble report on disposition of the estate's assets.  The probate court found that, in light of its order determining that the beach house was trust property, the estate in fact had no assets.  There is nothing in the record that shows the probate court erred in making this finding and Jane and Katherine, although they filed a lengthy opposition to Trumble's petition, did not request an accounting of any assets other than the $560,000 loan Trumble, as *trustee*, obtained.  Because the loan proceeds were trust assets, and will be accounted for in the trust proceeding, Trumble was not required to provide an accounting of the loan proceeds before obtaining an order terminating the estate.

*Appeal No. D062878*

Once again Jane and Katherine challenge the validity of the probate court's earlier determinations that Jane should be removed as personal representative of Mother's estate and trustee of Mother's trust, as well as the probate court's direction that the beach house be sold.  Those issues were settled in *Schooler II* and *Schooler III*.

They also misconstrue our holding in *Schooler I* and erroneously rely upon it to assert that the Brothers have been disinherited.  The Brothers have not been disinherited.  In *Schooler I*, we agreed with the Brothers that their challenge to Jane's final accounting did not disinherit them and that their attempt to surcharge Jane was not a will contest.  (*Schooler I*, *supra*, D053924.)  We did agree with Jane and Katherine that the Brothers could not attempt to recover *their own* attorney fees from Jane without violating the no

11

contest clause. (*Ibid*.) There is nothing in the record that shows that the Brothers thereafter sought to recover their attorney fees from Jane. Rather, they did oppose the motion of *Jane's* prior attorneys to recover attorney fees the estate had incurred while she was executor. That opposition did not violate the no contest clause.

Contrary to Jane and Katherine's contention, the probate court had the power to ex parte expunge notice of lis pendens they had recorded in an effort to prevent Trumble from selling trust assets, which sales the probate court had ordered. (See Super. Ct. San Diego County, Local Rules, rule 4.7.6(L) [court has discretion to hear matters ex parte].)

In short, none of the issues Jane and Katherine raise in either D062877 or D062878 have merit.

## II

As we noted at the outset, we have provided Jane, Katherine and their counsel with notice that we were considering dismissing their appeals as frivolous and imposing sanctions on them. (See *People ex rel. Lockyer v. Brar* (2004) 115 Cal.App.4th 1315, 1318 (*Brar*); *In re Marriage of Flaherty* (1982) 31 Cal.3d 637, 654.)

*Legal Principles*

Appellate courts have the inherent power to "summarily dismiss any action or appeal which has as its object to delay, vex, or harass the opposing party or the court, or is based upon wholly sham or frivolous grounds." (*Ferguson v. Keays* (1971) 4 Cal.3d 649, 658; see *Brar*, *supra*, 115 Cal.App.4th at p. 1318.)

In *Kleveland v. Siegel & Wolensky, LLP* (2013) 215 Cal.App.4th 534 (*Kleveland*) we recently set forth the principles governing our express power to impose monetary sanctions on appeal: "[Code of Civil Procedure] [s]ection 907 provides, 'When it appears

12

to the reviewing court that the appeal was frivolous or taken solely for delay, it may add to the costs on appeal such damages as may be just.' [California Rules of Court,] [r]ule 8.276(a) gives us the authority to 'impose sanctions . . . on a party or an attorney for: [¶] (1) Taking a frivolous appeal or appealing solely to cause delay. . . .' In explaining these provisions, our Supreme Court has explained 'an appeal should be held to be frivolous only when it is prosecuted for an improper motive—to harass the respondent or delay the effect of an adverse judgment—or when it indisputably has no merit—when any reasonable attorney would agree that the appeal is totally and completely without merit.' [Citation.]

"In determining whether an appeal indisputably has no merit, California cases have applied both subjective and objective standards. The subjective standard looks to the motives of the appealing party and his or her attorney, while the objective standard looks at the merits of the appeal from a reasonable person's perspective. [Citation.] Whether the party or attorney acted in an honest belief there were grounds for appeal makes no difference if any reasonable person would agree the grounds for appeal were totally and completely devoid of merit. [Citation.]

"The objective and subjective standards 'are often used together, with one providing evidence of the other. Thus, the total lack of merit of an appeal is viewed as evidence that appellant must have intended it only for delay.' [Citation.] An unsuccessful appeal, however, '"should not be penalized as frivolous if it presents a unique issue which is not indisputably without merit, or involves facts which are not amenable to easy analysis in terms of existing law, or makes a reasoned argument for the extension, modification, or reversal of existing law."' [Citation.]" (*Kleveland*, *supra*, 215

13

Cal.App.4th at pp. 556–557.)

When sanctions are warranted, in determining their amount, we consider """the amount of respondent's attorney fees on appeal; the amount of the judgment against appellant; the degree of objective frivolousness and delay; and the need for discouragement of like conduct in the future."' [Citations.]" (*Kleveland*, *supra*, 215 Cal.App.4th at p. 558.) However, "[r]espondent[s] . . . are not the only parties damaged when an appellant pursues a frivolous claim. Other appellate parties, many of whom wait years for a resolution of bona fide disputes, are prejudiced by the useless diversion of this court's attention. [Citation.] In the same vein, the appellate system and the taxpayers of this state are damaged by what amounts to a waste of this court's time and resources. [Citations.] Accordingly, an appropriate measure of sanctions should also compensate the government for its expense in processing, reviewing and deciding a frivolous appeal. [Citations.]" (*Finnie v. Town of Tiburon* (1988) 199 Cal.App.3d 1, 17.)

*Analysis*

Although we recognize our power to dismiss frivolous appeals and impose sanctions should be used sparingly to deter only the most egregious conduct (see *Flaherty, supra*, 31 Cal.3d at pp. 649–650), both dismissal and sanctions are fully warranted here. From an objective perspective, the arguments asserted have no merit whatsoever. As we have discussed, the arguments Jane and Katherine raise are either moot, are entirely unsupported by the record, have already been finally resolved against them, or are based on a completely erroneous view of the powers of the probate court to act ex parte.

Moreover, the record in these proceedings shows without any serious

14

contradiction, that by way of continuous meritless objections in the probate court and an unbroken train of frivolous appeals in this court, Jane and Katherine have engaged in an unceasing campaign designed to frustrate the probate court's orders in both the trust and estate cases. That record more than amply supports a finding of subjective bad faith.

Because Jane and Katherine's appeals are both objectively and subjectively frivolous, we dismiss their appeals. (*Brar*, *supra*, 115 Cal.App.4th at pp. 1319-1320.) Once again, the attorney fees incurred by respondents, the impact of the unnecessary delay of these trust and estate proceedings on the parties, and the need to deter future misconduct all support imposition of substantial sanctions. Accordingly, we impose on Jane and Katherine jointly and severally as sanctions $10,260 of the attorney fees incurred by Trumble; we also impose on Jane and Katherine as further sanctions payable to the clerk of the court the estimated $8,500 cost of processing this appeal. (See *In re Marriage of Gong & Kwong* (2008) 163 Cal.App.4th 510, 520.)

15

DISPOSITION

The consolidated appeals are dismissed. As sanctions for pursuing frivolous appeals, Jane and Katherine shall, as joint and several obligations, pay Trumble $10,260; as additional sanctions, Jane and Katherine shall, within 15 days after the date the remittitur is issued, pay the clerk of the court $8,500. The clerk of this court is directed to place the sums paid to him in the general fund.

 

BENKE, Acting P. J.

WE CONCUR:


HUFFMAN, J.


HALLER, J.

16