Filed 7/29/15  Winston v. Winston CA1/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| JOLENE WINSTON,<br><br>        Respondent,<br><br>v.<br><br>GARY M. WINSTON,<br><br>        Appellant. | A140415<br><br>(Marin County<br>Super. Ct. No. FL062557) |

Appellant Gary M. Winston challenges the trial court's denial of his motion for a new trial in this marital dissolution case.  He contends the denial was improper because it was based on his failure to present evidence at trial that the court had indicated in an unrecorded earlier exchange would be unnecessary.  In response, Gary's former spouse, Jolene, seeks sanctions contending that Gary's appeal was maintained solely for the purposes of delay and vexation.  We are not persuaded by Gary's contentions, but we deny Jolene's motion for sanctions, and we affirm.

I.
FACTUAL AND PROCEDURAL
BACKGROUND

The parties were married in 1988, and Jolene filed a petition for dissolution of marriage in June 2006.  Trial on the parties' dissolution did not begin until

1

October 2012.[1] The trial court heard testimony from Jolene, Gary, and five other witnesses over 11 days in October and November 2012, and January and February 2013; and about 600 exhibits were admitted into evidence. No court reporter was present during the first three days of trial, and the record on appeal contains only the first 16 pages of a reporter's transcript of proceedings held on one of the November trial dates. Our recitation of the relevant facts comes primarily from the order denying Gary's motion for a new trial, the order Gary challenges in this appeal. (*Walker v. Los Angeles County Metropolitan Transportation Authority* (2005) 35 Cal.4th 15, 18 [order denying motion for new trial is nonappealable but may be reviewed on appeal from underlying judgment].)

During the many years the case was pending, Jolene lived in property the couple owned in San Anselmo. At trial, the parties disputed how to account for money spent on various assets, including the San Anselmo property, during their separation. At the beginning of trial, Gary contended the property was Jolene's separate property and that the community should be reimbursed for the property's maintenance costs. On one of the trial days when there was no court reporter transcribing the proceedings, Gary requested access to the property so his realtor could perform an appraisal and, apparently, determine its fair rental value (the "request for access"). Jolene objected to the request on the grounds that three appraisals already had been completed and that the realtor Gary was proposing would be biased because he was Gary's friend and partner. The court denied the request as untimely because the case had been pending for so long. In doing so, the trial judge apparently also stated that the court would figure out the fair rental value, meaning it would rely on the three appraisals that had already been done and would consider any evidence and opinion the parties offered on the subject.

---

[1] The parties first litigated whether an agreement they signed during their marriage was an enforceable transmutation agreement under Family Code, section 852, subdivision (a). In a nonpublished opinion, this court affirmed the trial court's order finding the agreement was unenforceable. (*In re Marriage of Winston* (June 22, 2009, A122365).)

2

In its order denying Gary's motion for new trial, the trial court explained that at the time it denied the request for access Gary was claiming the San Anselmo home was Jolene's separate property, which rendered its rental value immaterial. According to the court, the reasonable interpretation of its statement about figuring out fair rental value in connection with the request for access was "that the court would of course 'figure it out' and that it had a level of sophistication in the area [telegraphing to the parties to prepare their presentation accordingly]." In contrast, Gary claims that when the trial court denied the request for access it stated it "was already very knowledgeable about the fair rental value of homes in Marin County based on [the judge's] extensive experience as Family Law Commissioner in the Marin County Superior Court, and that [the court] would decide the issue of the fair rental value of the family home based on that knowledge." Gary's trial counsel claims to have "understood that no evidence was to be presented on the issue of fair rental value of [the property], and therefore did not examine or call witnesses on that subject." Counsel acknowledged that the court did not specifically preclude such evidence, but counsel declined to present it given the trial court's representation that it would determine the rental value.

In any event, the realtor involved in the request for access ended up testifying at trial about the home's purchase price, size, condition, location, and improvements. But the realtor was not asked any questions about its fair rental value.

On the eighth day of trial, the parties agreed that the San Anselmo property would be considered a community asset so long as the parties set up a fund to pay for their son's college education. The agreement reserved the issue of whether any credits were to be awarded under *In re Marriage of Epstein* (1979) 24 Cal.3d 76 (*Epstein*) and *In re Marriage of Watts* (1985) 171 Cal.App.3d 366 (*Watts*). These cases establish the general rule that a spouse who has exclusive use of a community-property asset during separation should be required to reimburse the community for the value of using the asset during separation, unless the court finds that reimbursement would be inappropriate under the circumstances. (*Epstein*, at pp. 84-85; *Watts*, at pp. 373-374.)

3

Among the hundreds of exhibits admitted at trial was Jolene's Exhibit 106, a nine-page, single-spaced document that appears to respond to an accounting prepared by William Archer, another witness who testified at trial. Page two of the document explains that the San Anselmo property contains a main house as well as a guest unit, which Jolene stated she was unable to rent because Gary refused to allocate any community assets to complete necessary work on the unit. According to the exhibit: "Archer allocated all [the San Anselmo property's] expenses of $410,698.65 to Jolene. As stated above she should be charge [*sic*] only the *fair Rental rate of $3,800* for this 44 month accounting period August 2006 to April 2010 . . . ." (Italics added.) Neither the court nor either of the parties recalled Jolene testifying about the exhibit's reference to the rental value of the property and Gary did not rely on it for the purpose of establishing the property's rental value. According to the trial court, the exhibit was introduced to impeach Gary on an unrelated topic, which is consistent with it having been marked for identification on the fourth day of trial—more than a week before the parties stipulated the property was a community asset.

In March 2013, the trial court issued a proposed statement of decision spanning nearly 22 pages that covered all financial issues except spousal support and attorney fees. One of the many assets the court addressed in the proposed statement was the San Anselmo property, where Jolene continued to reside as of the time of trial. The property was appraised at $1.9 million in July 2012 and was assigned that value, with outstanding liabilities of $1.2 million. The court ordered a plan for Jolene to buy out Gary's interest in the home and provided alternatives if Jolene declined to do so. As for whether any reimbursement was required under *Epstein* and *Watts*, the statement of decision provided: "The parties' agreement regarding [the San Anselmo property] called for a reservation of Watts and Epstein credits. No evidence of such credits was presented at trial. Accordingly, the court finds there are no Watts or Epstein credits."

The trial court directed Jolene to prepare an accounting to show whether an equalizing payment was required under the proposed statement of decision. Jolene did so, and Gary did not object to it. Gary did, however, object to the proposed statement of

4

decision, arguing among other things that Jolene (rather than the community) should be charged for mortgage, tax, and insurance payments made on the San Anselmo home for a period of 31 months. He did not mention the fair rental value of the home, cite *Epstein* or *Watts*, or refer to Exhibit 106. Jolene responded to Gary's arguments about the property's expenses and contended that the tentative decision handled them correctly.

In the trial court's final statement of decision filed on May 10, 2013, the court reiterated that no evidence was presented about credits under *Watts* or *Epstein*, and it added that Gary never asked the court to adjust for such credits until he objected to the statement of decision. Jolene exercised her option to purchase Gary's interest in the home on June 26.

At the trial court's request, Jolene submitted an updated accounting to the court in July 2013. Gary then filed objections in which he raised the issue of accounting for expenses related to the San Anselmo property. Apparently for the first time, he claimed that he had been deprived of the opportunity to have a realtor determine a fair rental value for the property, and that he "did not press the issue based upon the Court's opinion that it had extensive expertise in determining fair market rents and could determine the fair market rent to be charged to Jolene" for purposes of assigning credits under *Watts*. The court did not consider the objections because they were untimely. Judgment of dissolution was entered on September 6.

Gary thereafter filed a motion for a new trial, arguing he was entitled to reimbursement from Jolene for her exclusive use of the San Anselmo property under *Epstein* and *Watts*. He repeated his claim that the trial court had declined his request to have an appraiser determine the fair rental value of the home. Gary further claimed that he made clear at least twice during trial that he sought reimbursement for rental value: when Jolene "introduced into evidence her Exhibit 106 in which she stated that she should be charged $3,800.00 as the fair rental value of the home" and also when the parties stipulated the San Anselmo home was community property but Gary and his trial counsel "expressly reserved the right to an award of Watts/Epstein credits for Jolene's exclusive use and possession of the home."

5

Gary additionally claimed, for the first time, that Jolene's Exhibit 106 provided substantial and uncontroverted evidence that the fair rental value of the home was at least $3,800 per month and that he was therefore entitled to be reimbursed in the amount of $140,600 for the time Jolene had exclusive use of the home when it was still a community asset. Gary and his trial counsel submitted declarations in support of the motion for a new trial describing various exchanges with the trial court.

Jolene submitted a 12-page declaration disputing Gary's and his attorney's version of events at trial. At the hearing on Gary's motion, the trial court also stated it had a different recollection of its ruling on Gary's October 2013 request for access.

The trial court denied Gary's motion for a new trial in a detailed 12-page order. The court concluded that Gary had misrepresented the court's ruling regarding the value of the San Anselmo home; that Gary's failure to raise the issue of *Epstein/Watts* credits at trial forfeited the issue; and that a materially different award would not have resulted even if the court had considered these credits because other adjustments would have been required. Regarding the statement in Exhibit 106 about the property's rental value, the court stated, "The idea that the court is charged with ferreting out an obscure portion of one of hundreds of lengthy exhibits not germane to the testimony generated in connection with the exhibit is not one that this court has ever encountered. The court is under the distinct impression that this duty rests solely with the litigants and counsel."

After Gary appealed from the judgment, he requested that a reporter's transcript be prepared but designated only the hearing on his motion for a new trial.

II.
DISCUSSION

A. *Gary's Appellate Arguments Fail Because they Are Not Supported by the Record.*

In his appellate briefs, Gary reiterates his contention that he detrimentally relied on the trial court's supposed promise, which it did not fulfill, to use its expertise to determine the fair rental value of the San Anselmo property. He claims his version of the unreported exchange about the request for access is similar to how Jolene and the trial court described it, but he includes only selective quotes from Jolene's declaration and the

6

trial court's order, without providing their full context. The entire legal section of his opening brief is based on his version of events, which the trial court characterized as a misrepresentation when it ruled on his motion for a new trial. Gary also continues to place great reliance on the fleeting reference to fair rental value in Exhibit 106, which we understand from the trial court's order was presented on a "wholly different topic."

We agree with Jolene that Gary's failure to procure an adequate record is fatal to his appeal. When prosecuting an appeal, "there are at least three immutable rules: first, take great care to prepare a complete record; second, *if it is not in the record, it did not happen*; and third, when in doubt, refer back to rules one and two." (*Protect Our Water v. County of Merced* (2003) 110 Cal.App.4th 362, 364, italics added.) This is consistent with the well-settled and "cardinal rule of appellate review that a judgment or order of the trial court is presumed correct and prejudicial error must be affirmatively shown. [Citation.] 'In the absence of a contrary showing in the record, all presumptions in favor of the trial court's action will be made by the appellate court.' " (*Foust v. San Jose Construction Co.* (2011) 198 Cal.App.4th 181, 187.) Without a reporter's transcript or settled statement of the relevant proceedings, we cannot reach the merits of Gary's arguments. (*Ehman v. Moore* (1963) 221 Cal.App.2d 460, 462-463.) He essentially asks this court to believe his version of events over the trial court's without a record supporting his side. No reviewing court could satisfy such a request, and we decline Gary's request to do so here.

*B. Jolene's Motion for Sanctions Is Denied.*

A closer question is presented by Jolene's motion for sanctions against Gary for having filed an appeal that she contends was frivolous and maintained for the sole purposes of delay and vexation. (Code Civ. Proc., § 907 [where appeal frivolous or taken solely for delay, appellate court may add to costs on appeal such damages as may be just]; Cal. Rules of Court, rule 8.276(a) [grounds for sanctions].) "An appeal is frivolous 'only when it is prosecuted for an improper motive—to harass the respondent or delay the effect of an adverse judgment—or when it indisputably has no merit—when any reasonable attorney would agree that the appeal is totally and completely without

7

merit.' " (*In re Marriage of Gong & Kwong* (2008) 163 Cal.App.4th 510, 516, quoting *In re Marriage of Flaherty* (1982) 31 Cal.3d 637, 650.) The first standard is tested subjectively, and the second is tested objectively. (*Ibid.*)

Gary's appeal clearly lacks merit. Were he an attorney, we might be more inclined to award sanctions. But although he was represented by counsel in the trial court, Gary appears in propria persona in this court. "We do not believe it is appropriate to hold a propria persona appellant to the standard of what a 'reasonably attorney' should know is frivolous unless and until that appellant becomes a persistent litigant." (*Kabbe v. Miller* (1990) 226 Cal.App.3d 93, 98.) Ironically, the lack of record that dooms Gary's appeal assists Gary in defeating Jolene's motion for sanctions. The trial court concluded its order denying Gary's motion for new trial by observing that "[a]t trial it was established that Gary Winston has engaged in litigation consistently for many years with a penchant for malpractice litigation. This motion appears to be a page from that playbook." But without a record of Gary's previous involvement in malpractice litigation, we cannot determine if this appeal is part of a pattern establishing that Gary is a persistent litigant such that an award of sanctions on appeal is appropriate. Mindful that sanctions should be " 'used most sparingly to deter only the most egregious conduct' [citation], and that [the fact] an appeal lacks merit does not, alone, establish it is frivolous" (*In re Marriage of Gong & Kwong*, *supra*, 163 Cal.App.4th at p. 518), we deny Jolene's motion for sanctions.

## III.
### DISPOSITION

The judgment is affirmed. Respondent Jolene Winston shall recover her costs on appeal.

_____
Humes, P. J.

We concur:


_____
Margulies, J.


_____
Banke, J.


_Winston v. Winston_ (A140415)

9