Filed 11/20/25  Masjedi v. Valdez CA2/1

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION ONE

| | |
|---|---|
| SAEED MASJEDI,<br><br>    Plaintiff, Cross-defendant, and Appellant,<br><br>v.<br><br>ELIZABETH VALDEZ,<br><br>    Defendant, Cross-complainant, and Respondent. | B340847<br><br>(Los Angeles County Super. Ct. No. 23STCV11253)<br><br>ORDER GRANTING REQUEST FOR JUDICIAL NOTICE, MODIFYING OPINION, AND DENYING REHEARING; NO CHANGE IN JUDGMENT |

THE COURT:

Appellant Saeed Masjedi's request for judicial notice, filed November 10, 2025, is granted.

The opinion filed on October 27, 2025, is modified as follows:

On page 6, footnote 4 is revised to read as follows:

[4] The minute order indicates no court reporter was present for the hearing.  The settled statement from the hearing contains no information regarding any arguments Masjedi made on the substance of the anti-SLAPP motion.

There is no change in the judgment. Appellant's petition for rehearing is denied.

_____

WEINGART, J.        ROTHSCHILD, P. J.        BENDIX, J.

Filed 10/27/25  Masjedi v. Valdez CA2/1 (unmodified opinion)

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| SAEED MASJEDI, | B340847 |
| Plaintiff, Cross-defendant, and Appellant, | (Los Angeles County Super. Ct. No. 23STCV11253) |
| v. | |
| ELIZABETH VALDEZ, | |
| Defendant, Cross-complainant, and Respondent. | |

APPEAL from orders of the Superior Court of Los Angeles County, Jill Feeney and Michelle C. Kim, Judges.  Dismissed in part and affirmed in part.

Saeed Masjedi, in pro. per., for Plaintiff, Cross-defendant, and Appellant.

Law Offices of Ashton R. Watkins, Ashton Ryan Watkins; Law Office of Bruce Adelstein and Bruce Adelstein for Defendant, Cross-complainant, and Respondent.

Plaintiff, cross-defendant, and appellant Saeed Masjedi challenges a trial court order denying his special motion under the anti-SLAPP statute (Code Civ. Proc., § 425.16)[1] to strike a cross-complaint filed by defendant, cross-complainant, and respondent Elizabeth Valdez. Valdez was Masjedi's landlord, and she alleges Masjedi waged a campaign of harassment against her after she sought to evict him. We affirm because Masjedi has failed to show via reasoned argument that the trial court erred in denying his anti-SLAPP motion. Indeed, both before the trial court and in his appellate briefing, Masjedi has set forth his position in only the most conclusory manner. We also grant Valdez's motion for appellate sanctions because Masjedi's appeal is frivolous and, by his own admission, undertaken for delay and to harass Valdez. (§ 907.)

### FACTS AND PRIOR PROCEEDINGS

The conflict between the parties arose over a kitchen water leak. In 2014, Masjedi rented a condominium from Valdez in the Rampart Village neighborhood of Los Angeles. At some point in 2023, Masjedi replaced the refrigerator Valdez had originally provided in the unit. Masjedi claims he did so with Valdez's consent; Valdez denies this. The water filter for the new refrigerator was not installed correctly, causing a leak into a neighboring unit and to the complex's parking garage. A neighbor notified Valdez of the leak, as did a representative of the homeowners' association. Valdez alleges that when she and a handyman went to inspect the unit, they discovered that Masjedi

---

[1] Subsequent unspecified statutory references are to the Code of Civil Procedure.

had tampered with the electrical wires and had changed the locks without Valdez's permission. According to Valdez, Masjedi became belligerent, ordered Valdez and the handyman to leave, and attempted to push Valdez out.

Valdez sent Masjedi a letter telling him that he would need to vacate the apartment to allow for repairs to the water pipes and drywall, along with "lots of other repairs." According to Valdez, Masjedi left her a voicemail stating that he would not allow workers to enter the unit.

On May 19, 2023, shortly after he received the notice to vacate, Masjedi filed suit against Valdez, alleging causes of action for intentional infliction of emotional distress and wrongful retaliation.[2] He claimed he noticed a leak under the kitchen sink in June 2022 and complained to Valdez about it. Rather than fix it, Valdez "undertook a course of retaliatory misconduct" against Masjedi, including making harassing phone calls, unlawfully entering the apartment and refusing to leave, and threatening to cut off the utilities and evict him.

Valdez filed an unlawful detainer action against Masjedi. According to Valdez, Masjedi responded by beginning a "campaign of harassment against me, which included[] sending me threatening letters, calling my telephone at all hours, yelling and berating me." Valdez, who is 79 years old, declared, "I was so afraid of him that I suffered headaches, sleep disturbances, anxiety and nervousness. I did not want to see him, because he could overpower me easily and physically hurt me given my age

---

[2] Masjedi's original complaint was not included in the appellate record. We sua sponte augment the record to include it. (Cal. Rules of Court, rule 8.155(a)(1)(A).)

3

and his size."  Valdez also alleged Masjedi's actions caused her to suffer increased cardiac palpitations, requiring medicine.  Valdez alleged that on July 20, Masjedi sent an email to his neighbor at the condominium complex informing her that he was suing Valdez and that he did not want the neighbor to "get involve[d] in any[ ]way in our litigation, or you will be part of [the] litigation and that is not what you want."  In the email, Masjedi continued: "I do not want you [to] spy or pass on any information to [Valdez] or testify in her behalf.  Enjoy your happy life and do not make it complicated for nothing.  [¶]  Litigation is costly and unpredictable and dang[e]rous.  [¶]  The reason I am mentioning this is because her attorney indicated that they have [a] witness, and I do not know [if] it is [a] bluff or who it is, and I just wanted to make sure we have [an] understanding."  Valdez alleged that twice during proceedings in the unlawful detainer suit, Masjedi yelled at her in the courthouse hallway, "drop your lawsuit, or I sue your ass."

Valdez prevailed in the unlawful detainer action, and the superior court entered judgment in her favor on September 29, 2023.  According to Valdez, before Masjedi vacated the condominium, he cut the pipes under the kitchen sink, pulled out the electrical wires, took all the light bulbs, vandalized a bedroom window, and failed to return the keys to the unit and to the parking garage.  Valdez "interpreted this violence as a message to me that he could also be violent to me physically as well.  This has in turn caused me a lot of emotional distress."

On February 2, 2024, Valdez filed a cross-complaint against Masjedi alleging causes of action for elder abuse, intentional infliction of emotional distress, and negligent infliction of emotional distress.  On May 23, Masjedi filed the motion at issue

4

in this appeal, which he titled as a motion to dismiss the cross-complaint pursuant to the anti-SLAPP statute (§ 425.16) and the litigation privilege (Civ. Code, § 47, subd. (b)).  The memorandum in support of the motion was two pages long and included only conclusory arguments.  The memorandum claimed that Masjedi "is entitled . . . to have the [c]ross-[c]omplaint . . . dismissed because . . . each [c]ause of [a]ction is based upon the privileged publication/broadcast by the [p]laintiff's communications concerning the course of litigation and/or in anticipation of litigation, as reflected in the [c]ross-[c]omplain[t]'s page 2, at lines 4, and at lines 8 through 15."  These lines of the cross-complaint, however, had nothing to do with communications concerning or in anticipation of litigation.[3]  Masjedi cited two cases in support of his position regarding the litigation privilege, *Silberg v. Anderson* (1990) 50 Cal.3d 205 and *Rusheen v. Cohen* (2006) 37 Cal.4th 1048, but he did not explain how these cases related to Valdez's accusations.

---

[3] Instead, these passages had introductory allegations about the parties.  Page two, line four said, "references will be made to certain allegations therein in this [c]ross-[c]omplaint." Page two, lines eight to 15 said Valdez was "the owner of residential real property, located at 244 S. La Fayatte [*sic*] Park Place, Unit 103, in the City of Los Angeles, County of Los Angeles, State of California, 90057 (hereinafter referred to as the 'property').  Ms. Valdez was at all relevant times, a senior over the age of sixty-five (65) years old.  [¶]  (2) Cross-[d]efendant, Saeed Masjedi, an individual (hereinafter referred to as 'cross-defendant'), was at all relevant times, a resident of the City and County of Los Angeles, and he was a tenant of the 'property' until a judgment order was entered on September 29, 2023 in favor of Ms. Valdez and against [Masjedi]."

5

The memorandum's discussion of the anti-SLAPP statute was likewise brief. Masjedi did not target any particular allegation(s) in the cross-complaint. He instead stated without elaboration that "[e]ach [c]ause of [a]ction of the subject [c]ross-[c]omplaint is barred by the anti-SLAPP statute . . . . Each [c]ause of [a]ction of the subject [c]ross-[c]omplaint incorporates the allegation made by Valdez that each [c]ause of [a]ction is based upon (1) the [p]laintiff's exercise of the [p]laintiff's federal constitutional First Amendment right of [f]reedom of [s]peech, and/or (2) the [p]laintiff's exercise of the [p]laintiff's federal constitutional First Amendment right of [p]etitioning activity, as an impermissible effort primarily aimed at chilling the [p]laintiff's federal constitutional rights." Masjedi again cited two cases, *Varian Medical Systems, Inc. v. Delfino* (2005) 35 Cal.4th 180, 192 and *Briggs v. Eden Council for Hope & Opportunity* (1999) 19 Cal.4th 1106, 1113-1117, but did not explain how they related to the case.

After a hearing,[4] the trial court denied the motion on June 18, 2024, finding that Masjedi had failed to show that the allegations in the cross-complaint were based on protected activity. The court reasoned that "Masjedi's alleged conduct making harassing phone calls to Valdez[] and damaging the unit Valdez rented to him do not fall within the scope of any of" the categories of conduct protected by the anti-SLAPP statute. Masjedi's "conduct does not become protected activity merely because it took place after Valdez filed her unlawful detainer

_____

[4] The minute order indicates no court reporter was present for the hearing, and the record does not include a settled statement regarding what occurred during it.

6

action or after Masjedi commenced his own lawsuit. Because these acts are not among the acts described in . . . section 425.16[, subdivision ](e), they are not protected activities." The court concluded further that Masjedi's alleged email to his neighbor was "not protected activity because the activity is illegal as a matter of law" as it constituted dissuading a witness in violation of Penal Code section 136.1.[5] The court explained that "[t]he language in the email was intended to dissuade [the neighbor] from testifying or appearing in this litigation because Masjedi specifically threatened [the neighbor] not to be involved in the litigation in any way, including testifying on Valdez's behalf. Masjedi does not dispute that he sent this email."

Following the court's denial of his anti-SLAPP motion, Masjedi filed what he characterized as a motion under section 663 to set aside the court's decision. In the motion, Masjedi claimed for the first time that he had not been served with Valdez's cross-complaint. He also alleged that the court's decision was wrong on the merits because all of the allegations in the cross-complaint were "based upon communications, and communicative conduct, related to, and generated by, Valdez's unlawful detainer action." Masjedi claimed that his email to the neighbor was an exercise of his First Amendment right to free speech and was not illegal.

On August 28, 2024, the trial court denied the motion, noting that section 663, which allows for motions to set aside a

_____

[5] That section makes it a crime, among other things, to "[k]nowingly and maliciously attempt[] to prevent or dissuade any witness . . . from attending or giving testimony at any trial, proceeding, or inquiry authorized by law." (Pen. Code, § 136.1, subd. (a)(2).)

judgment, decree, or special jury verdict, "is inapplicable here." Even if the motion were interpreted as a motion for reconsideration under section 1008, subdivision (a), the court concluded that Masjedi "has not met his burden [of] demonstrating any basis to vacate or modify the . . . [o]rder," and that he was "attempting to reargue issues raised" at the time of the anti-SLAPP hearing. That same day, Masjedi filed a notice of appeal stating he was appealing the court's order denying his section 663 motion, "with that [section] 663 [m]otion having been made pursuant to the June 18, 2024 . . . order denying [his m]otion to [d]ismiss the [c]ross-[c]omplaint pursuant to . . . [s]ection 425.16 and Civil Code [s]ection 47[, subdivision ](b)."

On August 18, 2025, Valdez filed a motion with this court seeking sanctions for Masjedi pursuing a frivolous appeal. A few days later, Masjedi emailed Valdez's appellate counsel that the sanctions motion had "encourage[d]" Masjedi because it showed "my [e]vil tactics inflicting legal costs to [Valdez] is [*sic*] working," that Masjedi would continue to inflict legal costs until Valdez paid him "the half million dollar[s] she owes me" for committing housing violations and crimes against him, and stating that Masjedi had a legal right to appeal. Masjedi ended the email in pertinent part, "for every dollar I spend to inflict, it costs your client $20 to respond, and I intend to drag you [for five] years in [the] court system and inflict as much as possible legal costs (to [Valdez]), so advise your client she will be drag[ged] in appeal courts for [a] long time. [S]o she better start considering to pay my half million dollar [*sic*] she owes me."

## DISCUSSION

### A. We Construe Masjedi's Notice of Appeal Liberally

Masjedi purports to appeal from the trial court's denial of what he characterized as a motion under section 663 to set aside the judgment. As the trial court noted, however, there was no judgment in this case, and, thus, his motion was more properly construed as a motion under section 1008 to reconsider the court's order denying his special motion to strike. Interlocutory orders such as orders denying motions for reconsideration generally are not appealable. (*Benton v. Benton* (2019) 39 Cal.App.5th 212, 217.) We therefore lack jurisdiction to consider an appeal from the court's August 28, 2024 order, denying Masjedi's section 663/1008 motion, and dismiss his appeal from that order. (*Lemaire v. All City Employees Assn.* (1973) 35 Cal.App.3d 106, 110.)[6]

However, " ' "notices of appeal are to be liberally construed so as to protect the right of appeal if it is reasonably clear what [the] appellant was trying to appeal from, and where the respondent could not possibly have been misled or prejudiced." ' " (*K.J. v. Los Angeles Unified School Dist.* (2020) 8 Cal.5th 875, 882; accord, Cal. Rules of Court, rule 8.100(a)(2).) In this case, it is clear that by filing his appeal, Masjedi also intended to

---

[6] For this reason, we also lack jurisdiction to consider Masjedi's argument, raised for the first time in the section 663/1008 motion, that service of the cross-complaint upon him was improper. In any event, we note that Masjedi did not file a motion to quash pursuant to section 418.10, and that his failure to make such a motion at or before the time he filed the special motion to strike waived any argument concerning alleged service issues. (§ 418.10, subd. (e)(3).)

challenge the trial court's ruling on his anti-SLAPP motion as that order was explicitly referenced in the notice.  Further, his notice of appeal was timely filed as to the denial of the anti-SLAPP motion.  Valdez was not misled by the notice of appeal—in her appellate brief, she acknowledges the rule of liberal construction of notices of appeal, and she argues in support of the trial court's order denying the anti-SLAPP motion.  In recognition of " 'the strong public policy favoring the hearing of appeals on the merits' " (*K.J.*, *supra*, at p. 882), we construe Masjedi's notice of appeal to include the denial of the anti-SLAPP motion.  The denial of such a motion is "appealable immediately, rather than as part of an appeal from a final judgment." (*Benton v. Benton*, *supra*, 39 Cal.App.5th at p. 217; see § 425.16, subd. (i).)

## B. Masjedi Has Not Shown the Trial Court Erred by Denying the Anti-SLAPP Motion

Masjedi's opening brief includes one sentence of argument against the trial court's anti-SLAPP and litigation privilege ruling:  "Clearly, the communicative acts sued upon in the [c]ross-[c]omplaint of Valdez, of my supposedly (1) asking for a date, (2) sending letters, (3) making telephone calls, (4) yelling, (5) communicating to Valdez that she must drop her lawsuit or else 'I will sue your ass[,'] and (6) sending an e-mail to a third party telling them to not get involved in the litigation, involve the exercise of the constitutional First Amendment [r]ights of [f]reedom of [s]peech, and of [p]etitioning to fall within the scope of both . . . [s]ection 425.16 and Civil Code [s]ection 47[, subdivision ](b), requiring the dismissal of the [c]ross-[c]omplaint of Valdez, and that her counsel not be entitled to any attorney fees or costs."

10

Masjedi does not elaborate on this one-sentence argument. He cites no case law. He makes no effort to address the trial court's reasoning in rejecting the same contentions. His failure to do so dooms his appeal because "it is a fundamental principle of appellate procedure that a trial court [order or] judgment is ordinarily presumed to be correct and the burden is on an appellant to demonstrate, on the basis of the record presented to the appellate court, that the trial court committed an error that justifies reversal." (*Jameson v. Desta* (2018) 5 Cal.5th 594, 608-609.) To meet this burden, " 'an appellant must supply the reviewing court with some cogent argument supported by legal analysis and citation to the record.' " (*Hernandez v. First Student, Inc.* (2019) 37 Cal.App.5th 270, 277.) " 'The appellate court is not required to search the record on its own seeking error.' " (*Nwosu v. Uba* (2004) 122 Cal.App.4th 1229, 1246.) An appellant "is not exempt from the foregoing rules because he is representing himself on appeal in propria persona." (*Ibid.*)

Masjedi's single-sentence argument is insufficient to show the trial court erred in its application of the anti-SLAPP statute. Not all speech is protected by the statute. Section 425.16 protects " 'act[s] in furtherance of a person's right of petition or free speech under the United States or California Constitution in connection with a public issue.' " (*Id.*, subd. (e).) To prevail in an anti-SLAPP motion, a "defendant must establish [first] that the challenged claim arises from activity protected by section 425.16." (*Baral v. Schnitt* (2016) 1 Cal.5th 376, 384.) " '[T]he defendant's act underlying the plaintiff's cause of action must *itself* have been an act in furtherance of the right of petition or free speech.' [Citations.] '[T]he mere fact that an action was filed after protected activity took place does not mean the action arose from

that activity for the purposes of the anti-SLAPP statute.' " (*Park v. Board of Trustees of California State University* (2017) 2 Cal.5th 1057, 1063.) If the defendant meets his burden of showing that the plaintiff's claim arises from protected activity, "the burden shifts to the plaintiff to demonstrate that each challenged claim based on protected activity is legally sufficient and factually substantiated. The court, without resolving evidentiary conflicts, must determine whether the plaintiff's showing, if accepted by the trier of fact, would be sufficient to sustain a favorable judgment. If not, the claim is stricken." (*Baral, supra*, at p. 396.)

Masjedi's single assertion that "the communicative acts sued upon in the [c]ross-[c]omplaint . . . involve the exercise of the . . . First Amendment [r]ights of [f]reedom of [s]peech[] and of [p]etitioning" fails to address the points described above and does not show the trial court erred. In addition, Masjedi does not mention or substantively address the second step of the anti-SLAPP analysis, i.e., whether the evidence that Valdez submitted in opposition to his anti-SLAPP motion was sufficient to sustain a favorable judgment on the portions of her claim that, in Masjedi's view, arose from protected activity.

## C. We Impose Sanctions on Masjedi for Filing a Frivolous Appeal

Valdez filed a motion in this court for sanctions on the ground that Masjedi filed an appeal that "was frivolous or taken solely for delay." (§ 907.) We gave notice that we were considering sanctions (see Cal. Rules of Court, rule 8.276(c)), and we now impose sanctions payable to Valdez as part of the costs on appeal, along with additional sanctions payable to the clerk of this court.

12

The test for appellate sanctions under section 907 includes both a subjective and an objective component. The objective test asks whether " ' " " 'any reasonable attorney would agree that the appeal is totally and completely without merit.' " ' " (*Malek Media Group, LLC v. AXQG Corp.* (2020) 58 Cal.App.5th 817, 834.) The subjective component focuses on the appellant's conduct to determine whether the appellant acted solely for an improper motive, " 'to harass the respondent or delay the effect of an adverse judgment.' " (*In re Marriage of Gong & Kwong* (2008) 163 Cal.App.4th 510, 516.) Either of these tests alone can be sufficient to support sanctions, "but the two tests are ordinarily used together, with one sometimes providing evidence relevant to the other." (*Malek Media Group, LLC, supra*, at p. 834.) In this case, there is ample evidence to justify sanctions under both standards.

Starting with the objective component, Masjedi fails to identify any communication arguably protected by the litigation privilege and cites only to introductory allegations about the parties which the litigation privilege clearly does not cover. With regard to the anti-SLAPP statute, Masjedi moved to strike the entire cross-complaint. "Where a defendant moves to strike the entire complaint and fails to identify, with reasoned argument, specific claims for relief that are asserted to arise from protected activity, the defendant does not carry his or her first-step burden so long as the complaint presents at least one claim that does not arise from protected activity." (*Park v. Nazari* (2023) 93 Cal.App.5th 1099, 1108.) Here, there are obvious claims in the cross-complaint that do not arise from protected activity such as vandalism, property destruction, and harassing phone calls. Further, Masjedi's failure to provide any meaningful argument

13

for reversing the trial court's decision shows that his appeal is objectively frivolous.  (See *Malek Media Group, LLC v. AXQG Corp.*, *supra*, 58 Cal.App.5th at p. 835 [the "appeal is objectively frivolous because it is devoid of factual or legal support"].)

This in turn supports a finding under the subjective standard: " ' "the total lack of merit of an appeal is viewed as evidence that [the] appellant must have intended it only for delay." ' " (*In re Marriage of Gong & Kwong*, *supra*, 163 Cal.App.4th at p. 516.)  If there was any doubt, the email from Masjedi to Valdez's attorney following the filing of the motion for sanctions confirms Masjedi's subjective intent.  Masjedi does not deny the authenticity of this email, in which he wrote that "for every dollar I spend to inflict, it costs your client $20 to respond, and I intend to drag you [for five] years in [the] court system and inflict as much as possible legal costs (to [Valdez]), so advise your client she will be drag[ged] in appeal courts for [a] long time."

We recognize that "sanctions should be 'used most sparingly to deter only the most egregious conduct' " (*In re Marriage of Gong & Kwong*, *supra*, 163 Cal.App.4th at p. 518) because " '[i]ndiscriminate application of section 907 could deter attorneys from vigorously representing their clients, and deter parties from pursuing legitimate appeals.' " (*Malek Media Group, LLC v. AXQG Corp.*, *supra*, 58 Cal.App.5th at p. 834.)  In this case, however, Masjedi's failure to advance even the most rudimentary arguments in favor of his case, coupled with his open acknowledgment that he is intentionally misusing the appellate process to maliciously inflict economic losses on Valdez, is sufficiently egregious to justify sanctions.

One of Valdez's attorneys declared that he had spent 25.5 hours working on the appeal and anticipated spending six

14

additional hours preparing for and attending oral argument.  At the attorney's standard billing rate of $650 per hour, this would yield a total cost of $20,475.  We find this amount reasonable and add this amount to the costs awarded to Valdez on appeal.  (See § 907.)  In addition, we impose "sanctions, payable to the clerk of the court, to compensate the state for the cost to the taxpayers of processing a frivolous appeal." (*Bucur v. Ahmad* (2016) 244 Cal.App.4th 175, 192.)  Because this appeal is relatively straightforward and does not involve a lengthy record, we impose $5,000 in sanctions, an amount less than courts typically impose for conduct such as Masjedi's.  (*Ibid.*)

## DISPOSITION

The appeal from the order dated August 28, 2024, on Valdez's motion under section 663, is dismissed.  The trial court's order denying the anti-SLAPP motion is affirmed.  In addition to her ordinary costs on appeal, Valdez is awarded $20,475 in sanctions under section 907 as further costs on appeal.  Masjedi is also ordered to pay $5,000 in sanctions to the clerk of the court no later than 15 days after the date the remittitur is filed to compensate the state for the cost of processing a frivolous appeal.

NOT TO BE PUBLISHED

WEINGART, J.

We concur:

ROTHSCHILD, P. J.              BENDIX, J.

15