Filed 4/14/26

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| AFSHIN ZAND,<br><br>    Cross-complainant and Appellant,<br><br>        v.<br><br>PONANI SUKUMAR,<br><br>    Cross-defendant and Respondent. | A171273<br><br>(Alameda County<br>Super. Ct. No. RG20064932) |

Afshin Zand, representing himself, appeals from an order awarding attorney's fees against him under Code of Civil Procedure section 425.16, subdivision (c)(1) (all further undesignated code references are to the Code of Civil Procedure).

In a prior appeal, we affirmed an order dismissing Zand's cross-complaint in an action filed by Ponani Sukumar and awarding Sukumar the attorney's fees he incurred to obtain the dismissal. (See *Zand v. Sukumar* (Feb. 29, 2024, A163376) [nonpub. opn.] (*Zand I*).) Our opinion awarded Sukumar additional attorney's fees incurred on appeal, with the amount to be determined on remand.

In this second appeal, we affirm again, seeing no merit to Zand's arguments attacking the attorney's fees order entered on remand. We reject each of Zand's assertions of error as baseless and again order him to pay

1

Sukumar's attorney's fees, this time for the present appeal.  We also impose sanctions for the pursuit of a frivolous appeal.

## I. BACKGROUND

"On June 15, 2020, Sukumar initiated the present action by filing a complaint against Zand, asserting several causes of action, including breach of contract, unjust enrichment, intentional and negligent misrepresentation, and unfair competition." (*Zand I*, *supra*, A163376.)  Zand filed a cross-complaint against Sukumar.  "[T]he trial court (Hon. Dennis Hayashi) struck [Zand's] cross-complaint . . . under the anti-SLAPP (strategic lawsuit against public participation) statute (Code Civ. Proc., § 425.16)," and awarded attorney's fees to Sukumar under section 425.16, subdivision (c)(1).  (*Zand I, supra,* A163376.)

Zand appealed in *Zand I*, contending "reversal [was] warranted because," among other things, "Sukumar's underlying complaint against [him] contained falsehoods and perjury."  (*Zand I*, *supra*, A163376.)  We found the *Zand I* appeal to be meritless and affirmed the dismissal of the cross-complaint as well as the attorney's fees order.  (*Ibid*.)  We also granted a motion by Sukumar for attorney's fees incurred on appeal.  (*Ibid*.)  On remand, the trial court (Judge Spain) granted Sukumar's fee request in part, awarding $41,580 in fees.[1]

Zand filed a timely appeal.

## II. DISCUSSION

Rather than present a challenge to Judge Spain's attorney's fees order on the ground that the amount of fees is unsupported or unreasonable, Zand attempts to attack Sukumar's entitlement to fees by claiming that Judge

---

[1] We take judicial notice on our own motion of the record filed in *Zand I.*

2

Hayashi did not actually grant Sukumar's anti-SLAPP motion or did not do so effectively. He makes a variety of other, equally unusual arguments. For example, he contends that no amount of fees is compensable because, by filing a notice of errata alerting us to some incorrect record citations in the respondent's brief in *Zand I* and failing to file a motion seeking to file an amended brief, Sukumar effectively withdrew his respondent's brief, so "no attorney work was done." According to Zand, our opinion in *Zand I* not only awarded attorney's fees for zero compensable work, but failed to recognize each of the trial judges who ruled against him in this case lacked jurisdiction to do so, and therefore so did we in deciding *Zand I.*

Zand's arguments are all aggressively creative but not one of them has a shred of merit. Because he asserts claims of error he failed to raise in *Zand I* or that we rejected in that appeal, explicitly or implicitly, he seeks to collaterally attack the order granting Sukumar's anti-SLAPP motion and our now final opinion affirming it. Zand had his opportunity in *Zand I* to contest Sukumar's entitlement to attorney's fees under section 425.16, subdivision (c)(1), and he lost. We decline to revisit that issue. Sukumar points out, and we agree, that Zand's attempt to circle back and mount a fresh attack on Judge Hayashi's anti-SLAPP ruling is either foreclosed by the law of the case doctrine (*City of Santa Paula v. Narula* (2003) 114 Cal.App.4th 485, 491–492) or is based on nonappealable judicial disqualification arguments that, even if they had arguable merit, should have been pursued by writ review years ago. (§ 170.3, subd. (d).)

### A.

### 1.

We begin with a step-by-step chronology of the principal issue Zand focuses upon, an issue at the root of many of his arguments: His assertion

3

that Judge Hayashi never actually entered an order resolving Sukumar's anti-SLAPP motion.

Judge Hayashi held a hearing on Sukumar's anti-SLAPP motion and took the motion under submission on February 17, 2021. In a reasoned order signed and dated February 23, 2021, adhering to a tentative ruling that was published and contested, Judge Hayashi granted the anti-SLAPP motion, awarded attorney's fees to Sukumar, and ordered Zand's cross-complaint dismissed with prejudice. Despite being signed and dated February 23, 2021, the order bears a file stamp indicating it was filed on April 23, 2021.

Although Sukumar served and filed a Notice of Entry of Order attaching the file-stamped order on April 30, 2021, there appears to have been some confusion about who had the obligation to serve the order once it was filed—Sukumar, or the court clerk.[2] On April 26, 2021, Sukumar filed an ex parte request asking that the court clerk serve the order. But any confusion over service was cleared up by early May. The court's minutes of May 6, 2021 indicate that Sukumar's April 26, 2021 ex parte application was "dropped."[3] The dropping of the April 26, 2021 ex parte request makes sense since, by the time the May 6, 2021 order was entered, the order granting the anti-SLAPP motion had been filed, Sukumar had served a notice of its entry, and the matter of service of the order had become moot.

---

[2] We note that the order includes the following language addressing administrative matters, just before the court's signature: "The Court will prepare the order and mail copies to the parties. Cross-Defendant Sukumar shall promptly file and serve the notice of entry of order."

[3] The format and substance of the May 6, 2021 order track with the April 26, 2021 ex parte application by Sukumar. The order specifically addresses two requests, numbered "request #1" and "request #2," which respectively match the subject matter of two separate requests made in Sukumar's April 26, 2021 ex parte application.

Zand offers a more sinister interpretation of the record. In his view, the order dated February 23, 2021 and file-stamped April 23, 2021 was just a "draft." He claims that Sukumar's counsel improperly obtained this "draft" and attached it to the April 30, 2021 Notice of Entry of Order, fraudulently making it look like the anti-SLAPP motion was granted, when it never actually was. Because the Register of Actions (ROA)[4] does not show any entry on April 23, 2021, Zand claims no such order was actually filed on April 23, 2021. His explanation for how the order came to be file-stamped is that Sukumar's counsel "manipulated the clerk" into filing it.[5]

The main item of "proof" for Zand's suggestion that there was no order granting Sukumar's anti-SLAPP motion is a digital image pasted into his opening brief, unsupported by any record citation, depicting what appears to be a fragmentary excerpt from the ROA. The image seems to show five entries in the ROA for items spanning the date range April 21, 2021 through

---

[4] The ROA, formally titled "Domain Case Summary," appears in the *Zand I* record as an attachment to the Clerk's certification in that appeal.

[5] When asked at oral argument how Sukumar's counsel had come into possession of a "draft" order, Zand suggested there may have been bribery of court staff or some other form of illicit inducement to someone with access to judicial work product. Sukumar's April 26, 2021 ex parte application provides a more benign explanation. A declaration from Sukumar's counsel in support of this ex parte request explains as follows: "On or about February 16, 2021, the Court issued a tentative ruling granting [Sukumar's] special motion to strike the cross complaint . . . . The tentative ruling stated that the Court would serve the order on the parties. The hearing was held on February 17, 2021, and the matter was taken under submission. On February 23, 2021, the Court posted on the [ROA] that the motion was granted. Notwithstanding the foregoing, the order granting the motion is not available for download on the ROA on the Court's website, and the Court Clerk has not served the parties with the order." In short, for technical reasons Sukumar's counsel could not retrieve a copy of the order from the court's website, so he asked the court to serve it.

April 26, 2021, with nothing shown for April 23, 2021.  We decline to infer an affirmative judicial act—the denial of a dispositive motion—from the absence of an entry in the ROA, particularly since an ROA entry for February 23, 2021 *does* state "Motion to Strike Granted."  Zand fails to cite or mention the February 23, 2021 ROA entry, relying instead on a digital image of unknown provenance that provides an incomplete picture of docket activity during the relevant timeframe.

We see no record support for Zand's contention that Judge Hayashi changed his mind and, without saying anything, decided to deny Sukumar's anti-SLAPP motion rather than grant it.  To support this peculiar reading of the record, Zand points to two orders by Judge Hayashi, the May 6, 2021 order dropping Sukumar's April 26, 2021 ex parte application from the calendar, and another order on April 28, 2021 denying the same ex parte request.[6]  But even if it is the case that the court inexplicably ruled on the same ex parte request twice, that would not matter.  Zand reads far more into these two cryptic orders than they will bear, especially given the usual presumption of regularity that guides our interpretation of any trial court record.  Based on the full chronology of procedural events shown by the record, we conclude that, although there was a delay of some weeks after Judge Hayashi signed the order granting Sukumar's anti-SLAPP motion on

---

[6] Why Judge Hayashi would rule on the same ex parte application twice Sukumar does not explain.  Actually, however, we cannot tell what ex parte application the April 28, 2021 order addresses.  While there are enough specifics to the later May 6, 2021 order to match it to Sukumar's ex parte application on April 26, 2021, there is nothing in the record to indicate what the court was addressing on April 28, 2021.  The order is terse and provides no specifics about the nature of the request being ruled upon or the date the request was made.  It states, simply, that "IT IS ORDERED that the Plaintiff's Application Re: Other Ex Parte is denied.  Previous orders stand."

February 23, 2021, the order was eventually filed on April 23, 2021, as definitively indicated by the file-stamp.  Whatever ambiguities might arise from the ROA, the court clerk's official act of filing the order as shown by the endorsed-filed stamp is the best evidence of the order's entry.  (See Cal. Rules of Court, rule 8.104(c)(2) [the entry date of an appealable order that is entered in the minutes and directs preparation of a written order is "the date the signed order is filed"]; cf. § 668.5 [in counties that enter judgments in a register of actions, the date of filing a judgment with the clerk shall constitute the date of its entry]; *Filipescu v. California Housing Finance Agency* (1995) 41 Cal.App.4th 738, 741 [rejecting argument that "because the register of actions . . . fails to indicate the judgment was in fact entered, the time for filing the notice of appeal has not yet expired"].)

Thus, as we stated in *Zand I*, and we repeat, "the trial court granted the [anti-SLAPP] motion in an order filed on April 23, 2021."  (*Zand I*, *supra*, A163376.)  There is not and there never was any reasonable debate about whether Judge Hayashi signed an order granting Sukumar's anti-SLAPP motion or about whether his order was filed.  The exact timing of filing and service is immaterial—since there is no issue here about the timeliness of the appeal—and even if there were some peripheral relevance to the dates of these events, Zand has provided only a few selected bits and pieces of the record from the relevant time period that, at most, might create some uncertainty around why the date recorded in the ROA for the order (February 23, 2021) does not match the date the order was officially marked as filed (April 23, 2021).  The explanation for that mismatch is not clear. But rather than indulge Zand's theory of skullduggery and deceit, we think the best reading of the record is simple and straightforward—the order signed by Judge Hayashi on February 23, 2021 was filed by the court clerk

7

on April 23, 2021 and served by Sukumar on April 30, 2021. The ex parte activity Zand relies upon to tell a different story shows nothing more than some administrative delay in the filing of the order, apparently complicated by a bit of confusion over who was responsible to serve the order once it was filed.

Obstinately refusing to accept the finality of the April 23, 2021 order following its affirmance in *Zand I*, Zand seems to think that the lack of clarity in the record concerning why it took until April 23, 2021 for the order granting the anti-SLAPP motion to be filed gives him a magic-bullet legal argument that will change everything. He builds this argument on the speculative reading of the record we have just rejected. The file-stamped order of April 23, 2021, according to Zand, is void, and as a result, (1) this court's opinion in *Zand I* is void, (2) this court's ruling on fees in *Zand I* granting appellate attorney fees and remanding for the trial court to determine the amount is void, and (3) Judge Spain's order on remand awarding the appellate fees is also void.[7] In Zand's reading of what happened, Judge Hayashi implicitly denied Sukumar's anti-SLAPP motion and never entered an order so stating. He believes we affirmed an order in

---

[7] In his reply brief, Zand adds yet another variation of his argument that Judge Hayashi failed to enter a valid order granting Sukumar's anti-SLAPP motion. He claims that, although Sukumar filed amended papers in support of his anti-SLAPP motion, Judge Hayashi erroneously ruled on the original, unamended motion. Because the original form of the motion was effectively superseded, Zand argues, the motion was effectively withdrawn, which renders Judge Hayashi's adverse ruling against him on it void. In accord with our usual practice, we decline to consider this argument as it was raised for the first time in the reply brief. Even if the argument had not been forfeited, we would reject it as wholly baseless. Zand has cited to nothing in the record to show that Sukumar's amended anti-SLAPP motion was materially different from the motion as originally filed.

8

*Zand I* that does not exist. And for Sukumar to serve an order granting the motion, according to Zand, is a fraud that has never been addressed.

This argument, with its Alice in Wonderland quality, is a familiar one. In *Zand I*, the contention that Judge Hayashi "Refused To Post Order Under Appeal, And 'Dropped' It" was one of 14 scattershot arguments Zand made; he devoted three paragraphs to it in his 54-page opening brief. We considered the argument to be so outlandish as to be unworthy of discussion, factually or legally. In our *Zand I* opinion, we summarily disposed of this and several other wholly unsupportable arguments made by Zand, and we were explicit about having done so, noting at the conclusion of our analysis, "We have considered the remaining arguments in Zand's appellate briefs and find no basis for reversal." (*Zand I, supra,* A163376.) But let there be no doubt: By rejecting the appeal in *Zand I*, we implicitly rejected the "no valid order" argument, and we give the argument no greater credence now. It has not improved with time.

**2.**

Some of Zand's voidness arguments do not depend on the claim that Judge Hayashi failed to enter a valid order granting Sukumar's anti-SLAPP motion. He makes four groups of additional arguments that head off in different directions, but eventually come back to the same voidness idea or some variation of it.

First, picking up on an argument made for the first time in his petition for rehearing in *Zand I*, Zand argues that due to "[Sukumar's] Notice of Errata" which sought to correct certain mistakes in his responding brief in *Zand I*, that brief was "nullified" and "void," which meant that, since no motion to amend the respondent's brief in *Zand I* was filed, "no Respondent Brief effectively was filed and no attorney work was done, [so] naturally no attorney fees incurred."

9

Second, Zand claims that his section 170.6 challenge seeking disqualification of Judge Hayashi was erroneously denied in March 2021, and that Judge Schwartz, who was assigned to the case at some later point, was the subject of an erroneously granted section 170.6 challenge. Judge Spain's assignment to the case, in Zand's view, was improper because Judge Schwartz was not validly recused, which, according to Zand, rendered the attorney's fees order by Judge Spain void. Zand fails to provide citations to the record for most of the procedural events on which he bases these claims of error pertaining to the rulings seeking disqualification of Judges Hayashi and Schwartz. Nor does he say whether he sought writ review of the allegedly erroneous disqualification rulings, which is the sole method of obtaining appellate review of such rulings. (§ 170.3, subd. (d).)

Third, Zand claims that Sukumar lacks standing to bring the claims in his complaint because he was not a party to a contract with Zand. He relies on the test for standing for a private plaintiff to assert a claim under the unfair competition law (Bus. & Prof. Code, § 17200 et seq.) and the false advertising law (Bus. & Prof. Code, § 17500 et seq.) as enunciated in *Kwikset Corp v. Superior Court* (2011) 51 Cal.4th 310. Sukumar's lack of standing, in Zand's view, deprived the trial court of jurisdiction to act, so its orders are void. Here, despite being advised repeatedly by Judge Hayashi of his mistaken view of how standing rules work, Zand fails to appreciate that an allegation of standing is legally adequate at the pleading stage. Even more basically, he fails to understand that the statutory test for standing under *Kwikset* has no application to Sukumar's contract and tort causes of action, which make up the bulk of the claims in his complaint. Judge Hayashi issued multiple monetary sanctions awards against Zand for his frivolous attempts to argue lack of standing despite repeated admonitions that the

10

argument is meritless, and when those sanctions went unpaid, Judge Spain imposed terminating sanctions.[8]

Continuing this pattern of making arguments that eventually resulted in terminating sanctions below, Zand still refuses to get the message. Sukumar's purported lack of standing has been a persistent theme in all of Zand's papers on appeal, here and in *Zand I*. Zand argued in his briefs in *Zand I* that Sukumar lacked standing to bring his complaint against Zand, and that therefore the court lacked jurisdiction. He also filed a motion relating to standing, entitled "Motion to Determine, in View of Judicially-Shown Perjurious Complaint, if Respondent Has Established Standing." That motion asked this court to require Sukumar to present evidence on appeal to show he has standing. The *Zand I* opinion addressed and denied this motion, stating in part: "Zand has shown no basis for this court to take the unusual step of taking evidence and making findings about whether Sukumar has standing (a potential defense by Zand to Sukumar's complaint), a question that is unrelated to the merits of the present appeal of the trial court's order striking Zand's cross-complaint under the anti-SLAPP statute." (*Zand I, supra,* A163376.) The standing argument Zand now asserts is just a variation on the same idea. At oral argument on this appeal, Zand once again requested that we issue an order authorizing him to take discovery on

---

[8] According to a declaration filed by Sukumar's counsel in support of his motion for terminating sanctions, "Defendant [Zand] has filed dozens of motions all premised on his argument that Plaintiff Sukumar lacks standing. This includes motions to strike the complaint, motions for reconsideration of the order denying the motions to strike, and motions for reconsideration of the denial of the motions for reconsideration. . . . [¶] The Court has denied each of these motions, repeatedly advising Defendant that the Court cannot decide the issue on the face of the pleadings. Defendant disregarded the admonishment[s], and continued to file the frivolous motions . . . ."

the issue of standing (we denied the request), and after we took the case under submission he filed an unauthorized motion making the same request (we declined to entertain it).

Fourth, and finally, Zand claims that, when we partially denied his request for judicial notice (RJN) of certain extra-record evidence in *Zand I*, we failed to understand that, under Evidence Code section 459, we had no authority to deny the RJN because the statute uses the word "shall," which, in his reading, means that, when a litigant requests a court to take cognizance of some item of proposed evidence, the court must grant the request if the litigant believes the evidence is relevant, and any failure to do so deprives the court of jurisdiction. In support of a petition for rehearing in *Zand I*, Zand filed a second RJN making a version of this argument. We summarily denied the rehearing petition, as we often do when such petitions simply reframe issues that have already been decided. We rejected the second RJN along with the petition for rehearing. So here, too, Zand continues to make legally baseless arguments that we dealt with and rejected in *Zand I*.

Although some of Zand's notice of errata, judicial disqualification, standing, and judicial notice arguments were raised in *Zand I*, and some are slightly refashioned versions of positions he took in his prior appeal, all of these miscellaneous additional arguments face the same obstacles Zand faces in reasserting his contention that Judge Hayashi entered no valid order granting Sukumar's anti-SLAPP motion: They, too, are either barred by the law of the case doctrine because they were rejected explicitly or implicitly in *Zand I*, or, to the extent Zand wishes to raise judicial disqualification issues concerning Judges Hayashi, Schwartz, or Spain, those issues are nonappealable here and were forfeited long ago. That is the basic position

12

Sukumar takes on the merits in responding to this appeal, and as noted above, we agree with it, so we will affirm.

" ' "California courts have long held that trial courts have broad discretion in determining the amount of a reasonable attorney's fee award. This determination is necessarily ad hoc and must be resolved on the particular circumstances of each case." ' " (*The Kennedy Com. v. City of Huntington Beach* (2023) 91 Cal.App.5th 436, 465.)  As a panel of this court held some years ago, the "only proper basis of reversal of the amount of an attorney fees award is if the amount awarded is so large or small that it shocks the conscience and suggests that passion and prejudice influenced the determination." (*Akins v. Enterprise Rent-A-Car Co.* (2000) 79 Cal.App.4th 1127, 1134.)  We are satisfied that Judge Spain exercised her discretion appropriately on this record and that the amount she awarded is not excessive.

As he did in *Zand I*, Sukumar filed a separate motion requesting an award of attorney fees under section 425.16, subdivision (c)(1).  Given the outcome of this appeal on the merits, the motion is granted.  As we explained in *Zand I*, an award of fees (including appellate fees) to a prevailing anti-SLAPP defendant is mandatory.  (*Trapp v. Naiman* (2013) 218 Cal.App.4th 113, 122.)  The amount of appellate attorney fees shall be determined by the trial court on remand.  (*Area 51 Productions, Inc. v. City of Alameda* (2018) 20 Cal.App.5th 581, 605.)

## B.

### 1.

We now come to the central flaw in Zand's approach to this appeal, a flaw that would cross a red line for any litigant appearing before us, represented or pro se.  This is what takes Zand's general approach to arguing

his appeal from a collection of ill-informed attempts at legal reasoning, largely devoid of support in the record, into sanctions territory. Underlying virtually everything Zand says in support of his appeal is the theory that, by labelling any order entered against him as void, he has a self-granted license to continue to relitigate past, adverse decisions against him, ad nauseum. This idea of voidness is wildly incorrect. If Zand's conception of voidness were right, litigation would be never-ending. His misuse of the doctrine of voidness as an all-purpose excuse to disregard basic principles of finality renders his appeal frivolous.[9]

*In re Marriage of Flaherty* (1982) 31 Cal.3d 637, enunciates the governing standard for appellate frivolousness determinations. "An appeal taken for an improper motive represents a time-consuming and disruptive use of the judicial process. Similarly, an appeal taken despite the fact that no reasonable attorney could have thought it meritorious ties up judicial resources and diverts attention from the already burdensome volume of work at the appellate courts. Thus, an appeal should be held to be frivolous only when it is prosecuted for an improper motive—to harass the respondent or delay the effect of an adverse judgment—or when it indisputably has no merit—when any reasonable attorney would agree that the appeal is totally and completely without merit." (*Id*. at p. 650.)

---

[9] Zand has been provided notice and an opportunity to respond to our preliminary determination that sanctions for the pursuit of a frivolous appeal may be ordered. On February 26, 2026, we issued an order to show cause (OSC) "why this court should not impose sanctions for making frivolous appellate arguments and motions or for other grounds for sanctions that are identified in [California Rules of Court,] rule 8.276(a)." Zand has filed a written response which adds nothing significant to the arguments already presented in his briefs, and he had a further opportunity to respond at oral argument.

The *Flaherty* standard is met in this case.

Fundamentally, Zand's voidness arguments are premised on the rule that void orders may be attacked at any time, prior to or after entry of final judgment, whether or not the voidness objection was raised in the trial court. (*People v. American Contractors Indemnity Co.* (2004) 33 Cal.4th 653, 660 (*American Contractors*); see *Kabran v. Sharp Memorial Hospital* (2017) 2 Cal.5th 330, 339.) But voidness is a narrow exception to more general principles of finality. And voidness arguments commonly fail because the challenged order is deemed to rest on an asserted error that falls short of a defect of "fundamental jurisdiction," as distinguished from an order entered "in excess of jurisdiction." (*American Contractors*, at p. 661.)[10] Every one of the asserted procedural defects Zand complains about as an excuse for collaterally attacking various orders leading to the anti-SLAPP attorney's

---

[10] The classic case explaining and applying this distinction is *Abelleira v. District Court of Appeal* (1941) 17 Cal.2d 280, 288, 290. For more recent examples of its application, compare, e.g., *Dill v. Berquist Construction Co.* (1994) 24 Cal.App.4th 1426, 1441 (lack of valid service of summons resulting in lack of personal jurisdiction voids judgment); and *Airs Aromatics, LLC v. CBL Data Recovery Technologies, Inc.* (2018) 23 Cal.App.5th 1013, 1018–1019, 1022–1023 (default judgment awarding relief beyond that requested in complaint violated due process, thereby voiding judgment) with *Lee v. An* (2008) 168 Cal.App.4th 558, 561, 566–567 (imposition of terminating sanctions without proper notice rendered the judgment voidable, not void); *American Contractors*, *supra,* 33 Cal.4th at pp. 660, 663 (premature entry of summary judgment renders judgment voidable, not void); *Grados v. Shiau* (2021) 63 Cal.App.5th 1042, 1051 (default judgment awarding interest in excess of the legal rate allowed by the California Constitution was act in excess of jurisdiction, rather than a lack of fundamental jurisdiction); and *City of Santa Paula v. Narula, supra,* 114 Cal.App.4th at pp. 490–492 (judgments underlying an award of attorney's fees in abatement proceeding against landowner by municipality were not void, where landowner claimed the municipality initiated the action by filing a "petition" rather than a "complaint").

fees order in this case is, at most, a matter of voidability that he either forfeited by not raising in *Zand I*, or that was resolved—implicitly or explicitly—in *Zand I* itself.

Zand fails to appreciate that "[e]rrors which are merely in excess of jurisdiction should be challenged directly, for example by motion to vacate the judgment, or on appeal, and are generally not subject to collateral attack once the judgment is final unless 'unusual circumstances were present which prevented an earlier and more appropriate attack.'" (*American Contractors*, *supra*, 33 Cal.4th at p. 661.) In this case, there are no such circumstances. Not even close. Nothing here justifies Zand in mounting what is a collateral attack on a final judgment. Rather than make a serious attempt to grapple with the law of finality, Zand resorts to characterizing acts by Sukumar and his counsel as "corrupt," "criminal," and "perjurious," and the judicial officers who have rejected the positions he is taking here as untrained and unable to understand "the fundamentals of jurisprudence," as if incendiary rhetoric will add strength to his arguments. But tossing around ad hominem attacks on anyone and everyone who disagrees with him hardly advances Zand's cause.

Misguided voidness arguments are not unusual coming from pro se litigants who persistently refuse to accept the finality of adverse judgments against them. (See, e.g., *Estate of Kempton* (2023) 91 Cal.App.5th 189, 201.) Certainly, many litigants, whether represented or not, can easily miss the nuances of the doctrine of voidness (which is sometimes challenging to apply even for lawyers and judges); and certainly, many pro se litigants, due to a combination of lack of legal training and lack of perspective, may be unable to resist making arguments they genuinely believe permit endless relitigation of past losses, particularly in matters that inspire strong feelings. But that is

no excuse. Although the reasons Zand decided to pursue his voidness theory may be understandable, none of them justifies its frivolousness.

Because no reasonable attorney would believe an appeal resting on Zand's theory of voidness might have any chance of success, we conclude that this appeal is objectively frivolous. We further conclude that the way Zand has attempted to use the voidness doctrine, on this record, is subjectively frivolous. The specific context must be kept in mind. Zand's voidness theory is the centerpiece to his campaign of serially relitigating the validity of the April 23, 2021 order we affirmed in *Zand I*. That order dismisses Zand's cross-complaint for violation of the anti-SLAPP statute, which by definition means the starting point for evaluating his intent is a finding—which we affirmed—that his cross-complaint constituted a misuse of the judicial process (i.e., it struck at Sukumar's freedom to petition). And since the entry of that order, Zand has now unsuccessfully appealed without basis twice, each time obstructing Sukumar's ability to obtain relief in the underlying case, resulting in total delay of more than five years.[11]

---

[11] In September 2020, Sukumar served discovery in an effort to proceed on the claims alleged in his complaint, but Zand refused to respond once the anti-SLAPP motion was filed, pointing to the section 425.16, subdivision (g), automatic discovery stay and arguing—frivolously, as we have pointed out— that the stay remains in place because he has never received valid "notice of entry of the order ruling on the [anti-SLAPP] motion" under section 425.16, subdivision (g). He has also taken the position he need not respond to discovery (or pay sanctions for failing to provide discovery) because Sukumar lacks standing to sue him. In effect, he has leveraged the same frivolous arguments made in appealing the dismissal of his cross-complaint into an excuse for refusing to comply with his discovery obligations. As noted above, this discovery noncompliance and failure to pay money sanctions flowing from it eventually resulted in the imposition of terminating sanctions. In the meantime, Zand's two appeals have blocked Sukumar from litigating the case to conclusion. Judge Hayashi ordered a stay during the pendency of the *Zand I* appeal, and shortly after imposing terminating sanctions, Judge

Add to that Zand's tendency to use invective in an apparent attempt to inflict reputational damage on his adversary and opposing counsel by spreading accusations of criminal conduct on the public record, a tactic he has used liberally in all of his appellate briefs, and we find that this appeal has been pursued for improper motives—to bring about delay and drag this case out for as long as possible, to burden Sukumar with unnecessary costs in retaliation for suing him, and to impugn the integrity not just of Sukumar but of anyone who he perceives has failed to recognize the righteousness of his cause. (Cf. *Grewal v. Jammu* (2011) 191 Cal.App.4th 977, 1000–1003 [a defendant's right to pursue an interlocutory appeal after losing an anti-SLAPP motion, while obtaining a stay of all proceedings affecting the merits of the case, is the aspect of the anti-SLAPP statute most subject to abuse].)

**2.**

We do not impose appellate sanctions lightly. "We are aware sanctions should be 'used most sparingly to deter only the most egregious conduct' [citation], and that an appeal lacks merit does not, alone, establish it is frivolous [citation]. This appeal, however, goes far beyond asserting an unmeritorious claim." (*In re Marriage of Gong & Kwong* (2008) 163 Cal.App.4th 510, 518.) All litigants—represented or not—are held to the same standards of conduct and practice in this court. (*Rappleyea v. Campbell* (1994) 8 Cal.4th 975, 984–985; *Nwosu v. Uba* (2004) 122 Cal.App.4th 1229, 1246–1247.)

This appeal falls well below these standards in multiple ways. In addition to giving us a set of poorly organized and difficult-to-comprehend

Spain stayed the proceedings a second time pending completion of this appeal, thereby preventing Sukumar from obtaining a judgment following the imposition of terminating sanctions.

18

briefs that are full of inaccurate legal citations and unsupported factual assertions, and designating an unwieldy 15-volume, 3,890-page clerk's transcript containing almost nothing of relevance to the attorney's fees order under review, Zand has repeatedly submitted unauthorized pleadings, baseless motions, and oddly titled documents.  Virtually every one of these unauthorized submissions, in some way, relies on his mistaken notion of voidness.  As a result of the core theory Zand has elected to pursue and the manner he has chosen to pursue it, he has not only foisted unnecessary expense on his adversary, but also forced us to consume an inordinate amount of court time, far out of proportion to the time and attention we would typically give to a comparable appeal of modest complexity.

This is not a case in which it might be said that we are imposing sanctions "on a propria persona appellant solely on the ground the appeal lacked merit" in circumstances where there was no evidence of improper motive.  (*Kabbe v. Miller* (1990) 226 Cal.App.3d 93, 98.)  Unlike the pro se appellant in *Kabbe*, Zand has shown himself to be "a persistent litigant" (*ibid.*) who has been engaged in a campaign of harassment and delay designed to impede Sukumar's ability to obtain relief in this action and retaliate against him for bringing suit.  We have already explained why Zand's voidness theory, the principal rationale for this campaign, is frivolous.  That alone would warrant sanctions, but it is not the only frivolous aspect of what he has done here.  Because every position Zand has taken is pure "sophistry" and "[goes] beyond proper advocacy and common sense" (*In re Marriage of Gong & Kwong, supra,* 163 Cal.App.4th at p. 521), we deem the entire appeal to be an "utterly futile gesture[] that [has] unnecessarily wasted the time and resources of respondent[] and this court." (*Bank of California v. Varakin* (1990) 216 Cal.App.3d 1630, 1638.)

19

We are dealing here with a litigant who has shown a disturbing lack of candor. As noted above, Zand claims that Judge Hayashi in fact denied Sukumar's anti-SLAPP motion, rather than granting it. This argument rests on an objectively false reading of the record. Zand provides no record citations to support his treatment of the relevant docket activity between February and April 2021, opting instead to give us a snapshot image of an ROA fragment from some uncited source. In doing so, however, he apparently fails to realize that the *Zand I* record includes the full ROA for the relevant timeframe. And upon inspection of a more complete listing of docket activity, we see that Zand leaves out a highly relevant fact—a docket entry in the ROA for February 23, 2021 stating "Motion to Strike Granted[,]" which destroys the premise of the central contention driving this appeal.[12] By itself, this omission would likely subject an attorney to discipline for misrepresenting the record (Cal. Rules of Prof. Conduct, rule 3.3(a)(1), (a)(3)), but Zand makes things worse, doubling down with vague speculation about illicit conduct involving court staff to explain his theory of an order that purportedly does not exist. No reasonable attorney would present pertinent "facts" to us in this deceptive fashion—contrary to what we can plainly see— much less hope to escape consequences for doing so.

Turning from mischaracterization of the record to misuse of the law, no reasonable attorney would make claims of erroneous denial of judicial disqualification by appeal (as Zand has done here) instead of by writ petition (as he should have done), especially when the alleged error is raised years

---

[12] When asked about this ROA entry at oral argument, Zand did not deny knowledge of it or show any contrition for failing to cite it. Instead, he tried to explain it as yet another indication of improper conduct by court staff, who, according to Zand, created the February 23, 2021 ROA entry "retroactive[ly]."

after the grounds for such claims arose.[13]  Nor would any reasonable attorney

make the lack of standing arguments Zand has made here, especially given

our rejection of them in *Zand I* and the history of his attempts to pursue this

line of argument below.  A pattern of prior sanctionable conduct in the trial

court is sometimes a prelude to a sanctions award on appeal, and it is here.

(See *Bucur v. Ahmad* (2016) 244 Cal.App.4th 175, 192 ["Appellate courts can,

and often do, consider the prior conduct of attorneys and their clients in

considering whether sanctions are appropriate."]; see *Kleveland v. Siegel &*

*Wolensky, LLP* (2013) 215 Cal.App.4th 534, 556–558.)  Zand was repeatedly

admonished and ordered to pay monetary sanctions by Judge Hayashi for

making meritless standing arguments, and he ultimately suffered

---

[13] We do not refer here to a more recent judicial disqualification issue
Zand raised in a recusal motion directed to the members of this appellate
panel.  Relying on disqualification procedures applicable to "judges of the
superior courts, and court commissioners and referees" (§ 170.5, subd. (a); see
§§ 170.1–170.3)—a definition that, in plain terms, does not describe us as
members of the Court of Appeal—Zand claimed that our recusal is mandatory
under Canon 3E of the California Code of Judicial Ethics.  The specific
grounds for this suggestion of partiality are unclear, but appear to boil down
to our having issued the opinion in *Zand I*, which, according to Zand,
contains errors we have not corrected, despite his petition for rehearing in
*Zand I* and various unauthorized submissions in this appeal (at least five by
our count) continuing to make arguments that we have now rejected multiple
times.  We denied this motion by order issued February 26, 2026, each
member of the panel having considered it and declined to recuse.  (See
*Kaufman v. Court of Appeal* (1982) 31 Cal.3d 933, 937–940.)  "Because we can
conceive of only one purpose, i.e., 'judge-shopping,' for [Zand's] attempt to
disqualify this court and/or to cause this court to recuse itself, we individually
and as a unit denied [Zand's] motion to disqualify this panel from proceeding
in this matter.  We are confident that review by a higher court will reveal no
bias or prejudice against [Zand] but will reveal a decision based solely upon
the law and the facts relevant to a determination of the legal issues." (*First
Western Development Corp. v. Superior Court* (1989) 212 Cal.App.3d 860,
867.)

terminating sanctions for his intransigence in doing so. That has some bearing on his motives for the pursuit of this appeal, since his ill-considered efforts to argue lack of standing in the trial court—not to mention our opinion in *Zand I*— should have put him on notice to refrain from making this futile argument yet again.

Then there is the lack of any real seriousness to some of the arguments offered up by Zand. Not even a misguided true believer in the rightness of his overall cause would think that these arguments might have a chance to succeed. Take, for example, the suggestion that by filing a notice of errata, Sukumar's counsel effectively nullified their work on the respondent's brief in *Zand I* and therefore cannot claim compensation for any time spent on that appeal. "Our reaction[,]" to quote our colleagues' succinct assessment of an exceedingly weak argument advanced in *Grewal v. Jammu*, *supra*, 191 Cal.App.4th at page 993, is simply "Disbelief." This argument is so far-fetched that we need not comment substantively on its lack of merit, other than to say that any reasonable attorney would realize that, if raised, it would harm rather than promote his client's interests. Another equally far-fetched example is the suggestion that judicial notice is some sort of procedure that entitles a litigant to demand a court must take cognizance of whatever evidence the litigant wishes to offer, an argument that also beggars belief.

While a sliver of arguable merit may be found in some of the most egregious of the published cases where appellate sanctions have been awarded under the *Flaherty* standard (see, e.g., *Estate of Kempton*, *supra*, 91 Cal.App.5th at p. 207 [nine out of ten arguments advanced by appellant deemed to be frivolous]), this appeal is worse than that. We conclude it lacks

22

any semblance of arguable merit *and* has been pursued for an improper motive.

**3.**

We are left only with the question of what sanctions to award. We are empowered to and might simply dismiss the appeal (see *Olsen v. Harbison* (2005) 134 Cal.App.4th 278, 289), but we have opted to decide the appeal on the merits to ensure there is no doubt about the preclusionary scope of our affirmance should Zand surface yet again in another appeal attempting to reassert the same arguments, as he has a propensity to do. Instead, we will impose two forms of monetary sanctions. First, pursuant to section 907 and California Rules of Court, rule 8.276, Sukumar is entitled to recovery of reasonable attorney's fees incurred in responding to this appeal (*Olsen*, at p. 288), but without duplicating the award of attorney's fees payable to him as a prevailing defendant under section 425.16, subdivision (c)(1). Second, for the unnecessary consumption of public resources Zand has caused through the pursuit of this appeal and the related motions, applications, and other miscellaneous pleadings Zand has submitted with the appeal, Zand is to pay monetary sanctions to the clerk of this court. "Courts frequently have imposed . . . sanctions, payable to the clerk of the court, to compensate the state for the cost to the taxpayers of processing a frivolous appeal." (*Bucur v. Ahmad, supra,* 244 Cal.App.4th at p. 192.) Sanctions orders of this type in the published cases have "ranged from $6,000 to $25,000." (*Ibid.*)

In this case, we will direct payment of $10,000 to the clerk of this court. We believe that amount is justified not only by the high degree of "objective frivolousness" shown by this appeal (*Kleveland v. Siegel & Wolensky, LLP, supra*, 215 Cal.App.4th at p. 559) and the indicia of bad faith, but also because the total amount of sanctions awarded must be high enough so that it has meaningful, deterrent bite over and above the attorney's fees that are

automatically payable to Sukumar under section 425.16, subdivision (c)(1). (*Cf. Kleveland*, at p. 558 [" 'Factors relevant to determining the amount of sanctions to be awarded a party responding to a frivolous appeal include "the amount of respondent's attorney fees on appeal; the amount of the judgment against appellant; the degree of objective frivolousness and delay; and the need for discouragement of like conduct in the future." ' "].)  Should Zand fail to pay the monetary sanctions we have ordered, he is forewarned that any future appeal arising out of this proceeding may face the more summary treatment of dismissal under the appellate disentitlement doctrine.  (Cf. *Stoltenberg v. Ampton Investments, Inc.* (2013) 215 Cal.App.4th 1225, 1230–1234 [appellate court has inherent power to dismiss an appeal by a party who refuses to comply with a lower court order].)[14]

---

[14] One final point—a comment on relief we are *not* ordering, at least for now—is also worthy of mention by way of forewarning.  In his motion for sanctions, Sukumar asks this court to declare Zand a vexatious litigant and enter a prefiling order against him under section 391.7.  A vexatious litigant, as defined by statute, includes a person who, acting in propria persona, "repeatedly relitigates" the validity of a determination made in litigation that was resolved against the person (§ 391, subd. (b)(2)) or repeatedly files unmeritorious motions, pleadings, or other papers (*id.*, subd. (b)(3)).  (See *First Western Development Corp. v. Superior Court*, *supra*, 212 Cal.App.3d at pp. 867–868 ["The purpose of the statutory scheme is to deal with the problem created by the persistent and obsessive litigant who has constantly pending a number of groundless actions, often against the judges and other court officers who decide, or were concerned in the decision of previous actions adversely to him."].)  Sukumar's section 391.7 request is arguably warranted, but we decline at this time to declare Zand a vexatious litigant or enter a prefiling order.  We do advise Zand, however, that, given the baselessness of the arguments and motions he has made in the prior appeal (A163376) and again in the present appeal, we would seriously consider the vexatious litigant question if he were to appear again in this court presenting similar arguments.  He should take note that, while he has avoided such a finding for now, he is on the cusp of our deciding to enter one.

## III. DISPOSITION

The attorney's fees award entered by Judge Spain pursuant to the remittitur in *Zand I* is affirmed. Zand is ordered to pay $10,000 in sanctions to the clerk of this court for the frivolous pursuit of this appeal. Pursuant to section 425.16, subdivision (c)(1), Sukumar's request for attorney's fees incurred in the present appeal is granted, with the amount to be determined by the trial court on remand. Zand is further ordered to pay Sukumar whatever amount of reasonable attorney's fees Sukumar incurred in responding to this appeal as a sanction, but without duplication of amounts awarded as attorney's fees under section 425.16, subdivision (c)(1). The cause is remanded for further proceedings to determine the amount payable by Zand to Sukumar. The amount payable to this court is due within ten days of the issuance of the remittitur. Sukumar shall recover his costs on appeal.

STREETER, J.

WE CONCUR:

BROWN, P. J.
GOLDMAN, J.

25

Trial Court:        Superior Court of California, County of Alameda

Trial Judge:       Hon. Julia Spain

Counsel:           Afshin Zand, in pro. per., for Appellant.

                    Friedhofer PC, James E. Friedhofer; Knottnerus & Associates, Willfred Knottnerus and Mark B. Simpkins for Respondent.